CASE 90—ACTION BY DANIEL GRIDER'S ADMINISTRATOR AGAINST THE
CENTRAL COAL & IRON COMPANY FOR CAUSING THE DEATH OF SAID
GRIDER.—JUNE 3.

# Central Coal & Iron Co. v. Grider's Admr.

### APPEAL FROM MUHLENBERG CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

MASTER AND SERVANT—EXISTENCE OF RELATION—INDEPENDENT CON-
TRACTOR—DEFECTIVE APPLIANCES—DUTY TO KEEP IN SAFE CON-
DITION.

Held:   A company employed a contractor to sink a shaft on its
property under a contract requiring it to "furnish all necessary
tools . . . for doing this work, and also a whim or hoist;"
"all labor to be furnished by" the contractor.  Pursuant to the
contract, the company furnished a whim or hoist, and, as a
part thereof, the necessary rope.  All the employes were engaged
and paid by the contractor, and the company did not direct or
control them in the performance of their duties.  HELD, that the
relation of master and servant did not exist between the com-
pany and the employes, and it therefore owed them no duty to
keep the rope in safe condition, and was not liable for the death
of one of them, caused by its having become defective.

H. P. TAYLOR AND P. Y. THOMAS, ATTORNEYS FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. The coal company had no control over the deceased, nor
did it control the manner or method of his work; the relation
of master and servant did not, therefore, exist.  Am. & Eng.
Ency. of Law, vol. 14, sec. 2, p. 752.

2. Before the relation of master and servant can exist for
the purposes of a damage suit plaintiff must allege and prove:
"1. That the appliances were defective.
"2. That the master had notice or knowledge thereof, or ought
to have had.
"3. That the servant did not know of the defect, and had no
equal means of knowing with the master."  Bogenschutz v.
Smith, 84 Ky., 330; L. & N. v. Shivell's Admx., 13 R., 993; C.
O. & S. W. R. R. Co. v. McDowell, 16 R., 1; Kelly v. Barber
Asphalt Co., 83 Ky., 363.

3. The liability of one person, for the negligence of another rests on the relation of superior and subordinate. See Law of Independent Contracts; Cooley on Torts, secs. 547, 548 and 549; Robinson v. Webb, 11 Bush, 474; Lawson's Rights, Remedies and Practice, vol. 1, sec. 295; Aldritt v. Gillett-Herzog Mfg. Co., 38 N. W., 741; Kueckel v. Ryder, 62 N. E., 1096, N. Y.; Simonton v. Perry, 62 S. W., 1090; Boardman v. Creighton, 49 A., 663; 95 Me., 154; Boomer v. Wilbur, 57 N. E., 1004.

W. L. REEVES, W. J. ROSS AND Q. B. COLEMAN, ATTORNEYS FOR APPELLEE.

### POINTS AND AUTHORITIES.

### FACTS.

The appellant, Central Coal & Iron Company, having decided to sink a shaft on its coal land, employed Foley & Nunan to do a certain part of the work under a contract, by the terms of which it bound itself to furnish the machinery and appliances necessary for doing the work, and by which said Foley & Nunan agreed to do the work of excavating the said shaft. Foley & Nunan hired Daniel Grider and Allen Bailey to assist them in this work. During the progress of the work the Central Coal & Iron Company, in performance of its said contract, furnished a wire rope as a part of a whim or hoist for use in lowering and raising the tub in said shaft, by means of which the workmen therein ascended and descended in the necessary work of excavating it.

On the 22d day of May, 1901, Daniel Grider was ordered by appellee to descend to the bottom of the shaft for the purpose of prosecuting said work, which he did by means of said rope and tub attached thereto. Sometimes afterward, while the said Grider was at work at the bottom of the said shaft, Foley ordered Allen Baily to descend therein by means of said rope for the same purpose. Bailey, in obedience to said order, got into said tub for that purpose, but as soon as he swung clear and his weight in said tub was put upon said rope it broke, and said Bailey and said tub fell upon Grider, a distance of 170 feet and killed both Bailey and Grider instantly. Said rope was rotten and broke by reason of said defective and dangerous condition.

Its unsafe and dangerous condition was apparent on inspection and could have been detected by the said company by examination and use of ordinary care. But no examination of said rope was ever made by said company or by Foley or Nunan or by any one.

Central Coal & Iron Co. v. Grider's Admr.

The part of the said rope attached to the said tub after it broke was eight feet long; said tub was two feet deep and the bail of the tub extended two feet above the top of the tub; so that the rope broke twelve feet above the bottom of the tub, and six feet above the head of Bailey while he was standing upright therein. Grider, when killed, was at the bottom of the shaft singing "Good Bye, Ada."

2. Pleadings. The petition alleges that the said Daniel Grider's death was caused by the negligence of the Central Coal & Iron Company in failing to inspect said rope and in furnishing under its contract a rope for use in the said work that was defective, unsafe and dangerous.

The defense is a traverse and a plea that Foley & Nunan were independent contractors, and of contributory negligence by Daniel Grider.

3. The law of the case. The injury to Grider was not caused by any act of Foley or Nunan nor by any act of their employes, but by the defective condition of the rope. The decisions, with few exceptions, hold that the plaintiff in all such cases can recover, but the right of recovery is put upon different grounds by different cases.

The right of recovery is by some put upon the ground of invitation or procurement, or implied invitation or license. The authorities are numerous and many of them are cited in the case of Benj. W. Thompkins v. Barnett & Record Company, decided by the Wisconsin Supreme Court in 1894, and reported in 26 Law Reports, annotated, 524, and in the note at the end of said case, and are as follows: Thompkins v. Barnett & Record Company, 20 L. R. A., 524; Gilbert v. Nagle, 118 Mass., 278; Elliott v. Pray, 10 Allen, 378; 87 Am. Dec., 653; Pickard v. Smith, 10 C. B. N. S., 470; Indermour v. Dames, L. R. I. C. P., 274; Hames v. North Eastern R. Co., L. R., 4 Exch., 254; Coughtry v. Globe Woolen Co., 56 N. Y., 124; 15 Am. Rep., 387; Mulchey v. Methodist Religious Society, 125 Mass., 487.

Other decisions hold that the liability in such cases rests upon the duty which the law imposes on every one to avoid acts imminently dangerous to the lives of others. Devlin v. Smith, 84 N. Y., 470; 42 Am. Rep., 311; Hays v. Philadelphia R. Coal & Iron Co., 150 Mass., 457; Elliott v. Hale L. R., 15 Q. B. Div., 315; Bennett v. L. & N. R. Co., 102 U. S., 577; 26 L. Ed., 235; New Orleans M. & C. R. Co. v. Henning, 82 U. S., 15 Wall., 649; Wharton on Negligence, secs. 349-352; Corley v. Harlow, 53 Mich., 507; 51 Am. Rep., 154.

The case of Conlon v. Eastern R. Co., 139 Mass., 195, holds that defendant is liable because it is "responsible for the con-

sequences of what it intended to have done." Other interesting cases are Pearce v. Whitcomb, 48 Vt., 127; Corley v. Hill, 92 E. C. L., 556; Latham v. Roach, 72 Ill., 179.

The law is well settled in Heaven v. Pender, 11 Q. B. D., 503, as follows:

"Whenever one person supplies goods or machinery or the like for the purpose of their being used by any person under such circumstances that every one of ordinary sense would, if he thought, recognize that unless he used ordinary care and skill with regard to the condition of the thing supplied or the mode of supplying it there will be danger to the person or property of him for whose use the thing is supplied, and who is to use it the duty arises to use ordinary care and skill as to the condition and manner of supplying such things, and for the neglect of ordinary care and skill whereby an injury happens a legal liability arises to be enforced by an action for negligence."

Negligence is a breach of duty. Whit. Smith on Negligence, chap. 1, p. 1; Cooley on Torts, 659; Railroad v. Jones, 95 U. S.

The following decisions put the ground of recovery in such cases upon a breach of duty. Roddy v. Missouri Pacific Ry. Co., 104 Mo., 234; Samuelson v. Cleveland Iron Co., 49 Mich., 172; Coughtry's Admr. v. Globe Woolen Co., 56 N. Y., 124; Mulchey v. Methodist Society, 125 Mass., 487; Lake Superior Iron Company v. Erickson's Admr., 39 Mich.; Sherlock v. Alling, 93 U. S., 99; United States v. Brig Maleck Adhel, 2 How., 234; Hough v. Railroad Co., 100 U. S., 213; Whart. on Negligence, sec. 211; Amer. & Eng. Ency. of Law, vol. 16, 205; Bailey on Master's Liability for Injuries to Servants, 771; Coughly v. The Rheaola, 19 Fed. Rep., 926; Lowndes v. Phoenix, 34 Fed. Rep., 760.

A railroad company permitting another company to use its track is liable to an employe of the latter for an injury caused by the failure to keep the track repaired. Saller v. Railroad Co., 25 Am. & Eng. R. R. Cases, 451; Smith v. Railroad, 19 N. Y., 127; Sawyer v. Railroad, 33 Am. & Eng. R. R. Cases, 394; Railroad v. Kilrom, 4 S. E. Rep., 165; Gulf C. & S. F. Ry. Co. v. Delaney, 55 S. W. Rep., 538; Galveston H. & S. Ry. Co. v. Vass, 57 S. W. Rep., 910.

Our contention is that the relation of master and servant existed between the Central Coal & Iron Company and Foley & Nunan and their employes. The Central Coal & Iron Company was digging a shaft for itself upon its own land for its own use and benefit. There is no express contract between master and servant that the master must use ordinary care to furnish safe appliances and machinery for the use of the servant. This is an implied contract which the law makes.

Central Coal & Iron Co. v. Grider's Admr.

In the case of Adams Express Company v. Schofield, 23 Ky. Law Rep., 1120, this court held that the relation of master and servant existed. In that case suppose the injury had been caused by a defect in the company's wagon, could not plaintiff have recovered? The ground of recovery by a servant against the master for injury caused by defective machinery is a breach of duty on a contract implied by law, which makes it the master's duty to exercise the duty of ordinary care in furnishing the machinery. In the case at bar the master agreed to furnish the machinery and the law makes the same implication on the same ground. It is the assumption by the owner to furnish the machinery for the use of those who work for him or by his procurement under some understanding or contract with him that creates this duty. On account of this relationship between the parties the law makes it the owner's duty to use ordinary care for the safety to those to whom the machinery is furnished.

Instructions. The instructions for plaintiff in the case at bar almost identical with those approved by the court in the case of Roddy v. Mo. Pac. R. Co., 104 Mo., 234. The ruling of the court in the case at bar in giving the instructions is sustained by the following decisions: Louisville & Nashville R. Co. v. Foley, 94 Ky., 220: Ashland Coal & Iron Company v. Wallace, 101 Ky., 626; Koltinsky, etc., v. Wood, 23 Ky. Law Rep., 1665; Champion Ice Manufacturing & Cold Storage Co. v. Carter, 21 Ky. Law Rep., 210.

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

The appellant, a corporation, is a coal operator. It, desiring to have sunk on its property a circular shaft, eight feet in diameter, entered into a contract with Foley & Nunan, evidenced by a writing, by which they, at a stipulated price per foot, agreed to sink it. There are provisions of the contract which read as follows: "The party of the second part agrees to sink a shaft at a point designated by the party of the first part, the said shaft to be eight feet in diameter and circular, for the sum of seven dollars and eighty-seven and one-half cents per foot in depth, reckoned from a point on a level with the bottom of the retaining wall, which will be built by a separate contract. It is fur-

ther agreed that the party of the first part shall furnish the necessary tools with electric blast battery for doing this work and also a whim or hoist to be worked by horse power, also two horses for said whim. All labor and ammunition necessary for the completion of the work to be furnished by the parties of the second part. . . ." Pursuant to the contract, the appellant furnished "a whim or hoist," and, as a part of it, a rope was necessary to be used for the purpose of suspending a tub used in the removal of the material from the shaft, and for the use of the workingmen going to and from their work in it. First a grass rope was used, but it was believed to be unsafe, when the appellant, at the request of Foley & Nunan, furnished them a new wire rope—one that had never been used before. It was delivered to them on the —— day of November, 1901, and they continued to use it from that date until the 22d day of May, 1902, when Allen Bailey, one of Foley & Nunan's employes, got into the tub for the purpose of going to the bottom of the shaft in the prosecution of his labors; and, as the tub swung clear, the rope broke about six feet above the bail of the tub. It fell, with Bailey in it, to the bottom of the shaft, which was about 170 feet deep, striking the intestate, Daniel Grider, who was working at the bottom of the shaft, killing him, probably, instantly, as he was dead when rescued from the shaft a few minutes later. The accident occurred while Foley & Nunan were sinking the shaft under their contract with the appellant. The personal representative of the intestate, Daniel Grider, brought this action to recover damages for the alleged negligence of the appellant in furnishing an insufficient, dangerous and defective rope to be used for the purpose hereinbefore stated.

The appellee claims that, as it was the duty of appellant

to furnish a rope to be used for the purpose and in the manner in which the one in question was being used when the accident occurred, the law imposed the duty of furnishing one in a reasonably safe condition, and to so keep it during the progress of the work. For the appellant it is contended that Foley & Nunan were independent contractors; that, in addition to paying them a stipulated price per foot for the work, it agreed to furnish tools, whim, etc., which it did to their satisfaction; that the intestate was their, not its, employe; and that the relation of master and servant did not exist between it and the intestate.

The evidence, without contradiction, establishes the facts to be as follows: That the wire rope was new, and, when furnished the contractors, that the estimated weight it would carry was many times greater than it was sustaining when the accident happened; that when the rope was furnished there were no apparent defects in it; that the contractors employed and paid their laborers; that their laborers were not on the pay roll of the appellant; that it did not direct or control them in the performance of their duties; that a party representing the appellant occasionally visited the shaft to note the progress of the work and make estimates, as required by the contract, to enable it to make payments to the contractors on the work. The rope could not have been defective when delivered to the contractors, or it would not have stood the use for six months before it broke. Copperas water, in contact with which it constantly came, caused it to rust and become defective. No jury composed of reasonable men could, from the evidence, or by reasonable inference drawn therefrom, have reached conclusions other than the ones last above stated.

Counsel invites the attention of the court to a great variety of cases which he contends support the right of the

appellee to recover in this case, claiming that some place the right upon one ground, and some upon others. Attention has been called to the case of Bright, Adm'r v. Barnett & Record Co. (Wis.), 60 N. W., 418, 26 L. R. A., 524. In that case it appeared that the defendant was engaged in building an elevator for grain, and contracted with a fire extinguishing company to construct a. fire extinguishing apparatus and appliances. The defendant was to furnish the staging that the men employed by the fire extinguishing company would need in performing the work. A staging plank or a plank walk of a single plank was needed, to be thrown across the bins about 70 feet from the bottom, or above the floor on which the employes stood or walked while prosecuting the work. The defendant undertook to, and did, furnish the walk across one of the bins for the use of the employes. The plank used had a large knot, extending nearly across it, about five feet from one end. The deceased was an employe of the fire extinguishing company, and it was necessary for him to walk across the plank; and, while doing so, it broke at the place where the knot was, precipitating him to the floor and killing him instantly. The deceased did not know of the defect in the plank, and, owing to darkness, could not see it. The defendant undertook to furnish the material and build the walk in a safe and suitable manner for the use of the deceased and other employes of the fire extinguishing company. A recovery was sustained against the defendant on two grounds: (1) The defendant, in furnishing the staging for the use of the employes of the fire extinguishing company, had impliedly invited the deceased to walk on it while doing his work, and was liable to him if he suffered injury from its de-· fective condition, caused by negligence in its construction. (2) Such liability might rest upon the duty which the law

imposes on every one to avoid acts immediately dangerous to the lives of others. In Mulchey v. Methodist Religious Society, etc., 125 Mass., 487, on an analogous state of facts, the court held the Methodist Religious Society liable. upon the theory that it had, in effect, invited and induced the injured party—an employe of one who had contracted to do certain painting on its church—to go upon dangerous and defective staging which it had procured to be erected for use of the contractor and his employes in performing the work under the contract. If the dangerous and defective condition of the staging from which the injuries resulted as appeared in Bright, Adm'r v. Barnett & Record Co., and Mulchey v. Methodist Religious Society, had not existed by reason of the defective construction of the staging, it is evident, from the statements and reasoning of the court, no recovery would have been allowed. In the last-named case the court said: In the present case the society, through its authorized agents, had accepted and used the staging, and had, in effect, invited and induced Needham and his workmen to come upon it to paint the church, and was liable to any of them who suffered injury from the dangerous condition of the staging, which was not apparent to them, and which was caused by negligence in its construction." A fair inference to be drawn from the cases to which we have alluded is that, if the staging had become defective by being used after it had been constructed and accepted by the contractors, the injured employe could not have maintained the action against Barnett & Record Company or the Methodist Religious Society. Many cases enunciating the same doctrine exist, but it would be unprofitable to cite and review them. Cases are cited to show (yet there are cases holding a contrary view) that premises upon which

an independent contractor is required to labor for the bene-
fie of the owner must be safe for the purpose. Other cases
are cited to show the circumstances under which owners
of land were held responsible for injuries suffered by per-
sons going upon it at the owner's invitation, etc. The in-
jury did not result from the defective condition of appel-
lant's premises. Therefore no such question is here for con-
sideration.

The chief contention of counsel for appellee is that the
relation of master and servant existed between the appel-
lant and the intestate, and that the appellee is entitled to
recover upon that theory. In this view, the court below
concurred, and instructed the jury in accordance therewith.
Among other instructions, the court told the jury that it
was the duty of the appellant to use ordinary care to keep
the rope which it furnished Foley & Nunan in a sufficiently
strong and safe condition for the purpose for which it was
being used. As the uncontradicted testimony shows, the
rope at the time it was delivered to Foley & Nunan was
new, and reasonably safe for the purpose for which it was
to be used. The real question is, did the law impose upon
appellant the duty to keep it in that condition during the
prosecution of the work under the contract? This duty
was not imposed on appellant by the terms of the contract,
nor was it by law, unless the relation of master and ser-
vant existed between appellant and the intestate. If the
relation of master and servant existed, then the duty was
imposed to furnish a rope in a reasonably safe condition
for the purpose intended, and so maintain it. The intestate
was neither employed, controlled, nor paid by the appellant.
It had neither the authority to employ him to work in the
shaft, direct him while there, or to discharge him. If he
had been the servant of the appellant, he would have been

entirely under its control and direction. In Cooley on Torts, pp. 531, 532, it is said: "A preliminary remark is essential regarding the employment, in the law, of the words 'master and servant.' The common understanding of the words and legal understanding are not the same. The latter is broader and comprehends some cases in which the parties are master and servant only in a peculiar sense, and for certain purposes—perhaps only for a single purpose. In strictness, a servant is one who, for a valuable consideration, engages in the service of another, and undertakes to observe his directions in some lawful business. . . . It could not at all depend on whether the master was to pay anything, nor whether the service was permanent or temporary. His control of the action of the other is the important circumstance, and the particulars of his arrangement are immaterial." The court, in Mulchey v. Methodist Religious Society, cited by counsel for appellee, said: "The plaintiff, not being employed, controlled or paid by the defendant, would seem not to be their servants, so that they would be liable for his acts, or their liability to him be governed by the rules applicable as between master and servant. Johnson v. Boston, 118 Mass., 114." In Robinson v. Webb, 11 Bush, 465, the court quotes with approval a definition of "master" as follows: "He is to be deemed the master who has the superior choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of the work, but in details." It appeared in that case that the owner of a lot of ground contracted with a builder that the latter furnish all the materials and labor, and should erect thereon a building for a fixed price, to be done under the supervision of an architect. The court held that it was an independent

employment, in which the relation of master and servant did not exist.

The court concludes that the relation of master and servant did not exist between appellant and Foley & Nunan, or between it and the intestate, and that it was not under a duty to look after the rope and keep it in a reasonably safe condition. If any one was guilty of actionable negligence, Foley & Nunan were, in using the rope after it got in an unsafe condition. Suppose a pick and shovel which appellant had furnished them had become unsafe for use after they had commenced using it, and in consequence thereof one of their employes had been injured; would the appellant have been responsible therefor? We think not. Neither is it any more responsible in the case at bar than it would have been in the supposed case. The undisputed facts show that the negligent act (if such there was) did not consist in furnishing an insufficient or defective rope, but in allowing it to become so by those to whom it was furnished—the intestate's employers, between whom the relation of master and servant existed. Without passing upon the question (it not being before us) as to whether or not the appellant would have been responsible, had it furnished a defective rope, and the intestate had been killed in consequence thereof, it is sufficient to say that as there was no evidence to show that it was defective when it was delivered to Foley & Nunan, and, further, as the relation of master and servant did not exist between appellant and intestate, no duty rested on it to see that the rope continued safe for use in the shaft, the court should have given the jury peremptory instructions to find for the appellant.

The judgment is reversed for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.