# Richmond.

GINTER'S EXECUTORS v. SHELTON AND OTHERS.

DECEMBER 9, 1903.

Absent, Buchanan, J.*

1. APPEAL AND ERROR—*Amount in Controversy.*—Where the claim of several persons to take as legatees under a particular clause of a will is resisted by the executor, and there are separate decrees in their favor, the amount in controversy in this court, as to the executor, is the aggregate amount of the decrees against him, although no one of them would be sufficient to give the court jurisdiction.

2. WILLS—*Construction—"Servants."*—In the absence of anything in the will or in the circumstances surrounding the testator to show a contrary intention, a gift by will "to all servants in my employ at the time of my death fifty dollars each" will include laborers on the farm of the testator. The word "servants," especially in connection with the word "all" preceding it, will be deemed to have been used in a comprehensive sense, and will not be restricted to domestics.

Appeal from decrees of the Circuit Court of Henrico county, pronounced in a chancery suit, wherein the appellee, Shelton, suing on behalf of himself and others, was the complainant, and the appellants and others were the defendants.

*Affirmed.*

The opinion states the case.

*Charles S. Stringfellow,* for the appellants.

*Meredith & Cocke* and *Coalter & Wise,* for the appellees.

*Judge Buchanan was detained at home by sickness.

KEITH, P., delivered the opinion of the court.

J. B. Shelton, suing on behalf of himself and all others who might come in and contribute their proportion of the costs, filed his bill in the Circuit Court of Henrico county, asking the construction of codicil No. 5 of the will of Lewis Ginter, deceased, by which he bequeathed to certain persons therein named specific sums of money, and then uses the following language: "To all servants in my employ at the time of my death fifty dollars each." Quite a large number claimed the benefit of this provision, and by the decree of the Circuit Court the executors were required to pay out in the aggregate the sum of something more than $6,000 to these legatees, whose separate demands were $50 each. The executors of Mr. Ginter appealed from this decree, and the case is now before us for review.

The first question we are to dispose of is the motion made by appellees to dismiss this appeal for want of jurisdiction; their contention being that, as each one of appellees receives only the sum of $50 by the decree, it does not come within the jurisdictional limit imposed by law upon this court.

This question first arose in the case of *Umbarger* v. *Watts*, 25 Gratt. at page 167. That case is just the converse of the one before us. A number of judgment creditors sought to subject their debtor's lands to the satisfaction of their judgments, none of which amounted to $500. Upon a decree dismissing the bill, it was held that the Court of Appeals has no jurisdiction to allow or hear an appeal from a decree on the ground that the united judgments amount to more than $500.

The precise question now under consideration arose in *Winchester & Strasburg Railroad Co.* v. *Colfelt et al.,* 27 Gratt., at page 780. The plaintiff Colfelt's judgments aggregated only $169.91; the judgment of Jenkins amounted to $1,117.60, which he was allowed to come in and prove before the commissioner; and the final decree against the railroad company was for the aggregate of all the judgments, amounting to $1,286.91, of which

the company complained.  Says the court: "If aggrieved, to what extent is it (the railroad company) aggrieved by the decree?  To the amount of Colfelt's judgments, or the aggregate of all the judgments?  Clearly the latter.  And the company being the party seeking the reversal of that decree, if it is erroneous, it is aggrieved to the extent of all the judgments; and this court is rightfully in possession of the case upon the petition of this appellant, and has jurisdiction to review the decision of the lower court, and to reverse the decree, if found to be erroneous."

The question has arisen in numerous cases, and the decisions have been unanimous.  In *Williams' Adm'r* v. *Clark's Representatives,* 93 Va. 691, 25 S. E. 1013, it is held that, in a suit to settle the estate of a decedent, the aggregate amount of the debts decreed against his representative is the amount which the representative has in controversy, and he has the right of appeal · as to all the creditors, although the claims of some of them are less than $500.  And in *Hicks* v. *Roanoke Brick Co.,* 94 Va. 742, 27 S. E. 596, the court refers to all of the Virginia decisions, and holds that the amount decreed against the appellant is the amount in controversy, as to him, and not the several amounts decreed in favor of the appellees.

If the aggregate of the sums decreed against the appellant exceeds $500, this court has jurisdiction, although the amount decreed to no one of the appellees amounts to $500.

The motion to dismiss must be overruled.

Coming to the case upon the merits, we find that the only question raised is as to the meaning to be given to the word "servants," as used in the fifth codicil of the will.  It is as follows: "Referring to the Fourteenth Clause of my will dated June 15th, 1897, I direct my executors to pay the following persons the sum set opposite their names."  Then follows the names of 11 legatees, who are given sums ranging from $2,500 to $200; and it appears from the evidence that some of them were in his

employment at the time as domestic servants, while others were engaged at a factory in the city of Richmond in which Mr. Ginter was interested. The appellees were employed upon his farms, of which he owned several near the city, and do not come within the class recognized by law as menial or domestic servants.

Mr. Minor says that a master is one who exercises personal authority over another, and that other is his servant. He then goes on to say that the several classes of servants are, first, slaves; secondly, menial servants; third, apprentices; fourth, laborers; fifth, stewards, bailiffs, factors, agents, etc. 1 Minor's Inst. (3d Ed.) c. 14, p. 179.

"A servant," says Wood's Master & Servant, sec. 1, "strictly speaking, is a person who, by contract or operation of law, is for a limited period subject to the control of another in a particular trade, business, or occupation."   ∘

The primary definition given by the Century Dictionary is: "One who serves or attends, whether voluntarily or involuntarily; a person employed by another, and subject to his orders; one who exerts himself or herself or labors for the benefit of a master or employer." And the Standard Dictionary defines a servant as: "(1) A person employed to labor for the pleasure or interest of another; especially, in law, one employed to render service or assistance in some trade or vocation, but without authority to act as agent in place of his employer; an employee. (2) Specifically, a person hired to assist in domestic matters, living within the employer's house, and making part of his family; hired help." Webster is to the same effect.

The testator has seen fit to use the most comprehensive term he could have employed; and, as though it had been his purpose to exclude any contrary conclusion, he accentuates this general term by placing before it the adjective "all," which can serve no

other purpose than to intensify, for it cannot enlarge, the definition to be given to the word "servants," which it qualifies. "All" must be given that effect, or it has none. There is nothing in the will, nor in the context of the residue of the clause, which limits the meaning of the word "servants." Indeed, if resort be had to one of the usual modes of interpretation, and we should apply the doctrine of *noscitur a sociis,* the effect would be to enlarge, if possible, rather than limit, the meaning of the word "servants," for it clearly appears from the evidence that among those specifically named are at least three persons who were not at the date of the will nor at the death of the testator his servants in any sense. They had been in his employment, they had been his servants, and that fact constituted the motive of the gift, but they were mere strangers to him when the will was written and at the time of his death.

The word "servant" embraces many classes. It is a generic, and not a specific, designation. It would have been easy to confine the bequest to a class of servants, such as "menial," "household," or "domestic," if such had been the intention of the testator, but no such restraining purpose is shown. Our office is to find out the intention of the testator from the words he used, giving to them their usual or common meaning. It is not for us to interpolate words, or to indulge in strained construction, in order to effectuate a presumed intention. We are here to interpret a will, and not to make one.

The testator, during his life and by his will, disposed of a princely estate. In framing that portion of his will which disposes of the bulk of his property, he doubtless had the benefit of counsel learned in the law, but when he came to write this codicil he took counsel only of his kindly heart. He had endowed many charities, had enriched his kindred, and assisted his friends, and finally he remembered his servants. To the more favored or deserving he gave legacies by name, and then to each of a class the sum of $50, though the individuals composing it may have entered his service only at the eleventh hour.

Opinion.

It is not for us to stint the stream of testator's bounty within a narrower channel than his generosity saw fit to trace, and it may well be that this remembrance of the humble and the needy is what he now recalls with greatest satisfaction.

The decree of the Circuit Court is affirmed.

*Affirmed.*