WILLIAM L. BOYLE, SARAH BETHEL, by her husband and next friend, CLARENCE BETHEL, and ELI PELCHAT, v. RICHARD F. HOWE, as executor of the Estate of James Deering, Deceased.

171 So. 667.

Opinion Filed December 27, 1935.

On Rehearing December 14, 1936.

On Further Rehearing Denied January 19, 1937.

*Van C. Swearingen,* for Appellants;

*Hudson & Cason* and *Knight, Adair, Cooper & Osborne,* for Appellee.

PER CURIAM.—In this cause Mr. Chief Justice WHITFIELD, Mr. Justice BUFORD and Mr. Justice DAVIS are of the opinion that the decree of the Circuit Court should be affirmed as to Pelchat and reversed as to Bethel and Boyle, while Mr. Presiding Justice ELLIS, Mr. Justice TERRELL and Mr. Justice BROWN are of the opinion that the decree of the Circuit Court should be affirmed. When the members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the decree should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the decree should be affirmed; therefore it is considered, ordered and adjudged under the authority of State, *ex rel.* Hampton v. McClung, 47 Fla. 224, 37 So. Rep. 51, that the decree of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD, and DAVIS, J. J., concur.

### ON REHEARING HAD MARCH 18, 1936.

PER CURIAM.—This is the third appearance here of cases involving the construction of the fifth paragraph of the will of James Deering, deceased. For former cases see Howe v. Lowe, 103 Fla. 1196, 137 So. 521; Howe v. Fry, 116 Fla. 528, 157 So. 331.

William L. Boyle, Sarah Bethel by her husband and next friend, Clarence Bethel, and Eli Pelchat brought their bill of complaint against Richard F. Howe, as sole Executor of the estate of James Deering, deceased, praying that the fifth paragraph of said decedent's will be interpreted and construed with particular reference to the exclusive right and power of Richard F. Howe, under the will to determine arbitrarily and without reason who were servants of said James Deering at the time of his death; and whether Richard F. Howe has the exclusive right and power to determine arbitrarily and without reason the number of years' service complainants have respectively served and the amounts of bequests to which they are severally entitled; whether complainants, or any of them, were servants of James Deering, deceased, at the time of hs death and entitled to bequests under paragraph five of the will, and what amount, if any, each complainant, as servant, was entitled to receive thereunder.

The fifth paragraph of the will of James Deering, deceased, was worded in this language:

"I give and bequeath to each servant in my employ at the time of my death the sum of One Hundred Dollars ($100.00). To each of said servants who has been in my

continuous employ for two (2) years prior to my death I give and bequeath an additional Three Hundred Dollars ($300.00); to each of said servants who has been in my continuous employ for more than two (2) years prior to my death I give and bequeath an additional Three Hundred Dollars ($300.00) for each year's continuous service beyond said (2) years. To the Executors hereof I give the exclusive right to determine who are my servants at the time of my death, also the number of years' service they have respectively served and the amount of the bequests to which they are severally entitled."

Complainants' claim to a share of the estate was embodied in Plaintiffs' Exhibit "B" which was worded in the following language:

"Sarah Bethel went to work for James Deering, deceased, on December 24, 1915, during this time she worked for him as waitress and in the laundry. She worked in the house, cleaning up and doing general maid's work. She also worked in the kitchen, cooking, washing dishes, and cleaning up the kitchen. She was in the employ of James Deering doing this kind of work, at the time of said James Deering's death. She was at all times, night or day, subject to the orders and calls of Mr. Deering.

"William L. Boyle went to work for James Deering on November 24, 1922, and was, from said date, continuously in the employ of said James Deering, deceased, up to and including the date of the death of the said James Deering. During this time Mr. Boyle worked in and around the house and vegetable garden and flower gardens, attending and caring for the same, and irrigating and watering the flowers and vegetables and lawns surrounding the house. He also repaired water pipes, made extensions, etc., in and about the Deering estate, for the purpose of irrigating and

watering the vegetable gardens, flower gardens, lawns, etc., and on occasions, made repairs on what might be classed as minor plumbing. He was general 'handy man' about the property. He was, at all times, night and day, subject to the calls and orders of Mr. Deering.

"Eli Pelchat entered the employ of Mr. James Deering during the month of December, 1915, and was from said date continuously in the employ of said James Deering, deceased, up to and including the date of the death of the said James Deering. Mr. Pelchat worked as a gardener in the Italian flower gardens. His work consisted of taking care of the flowers, pruning, watering, fertilizing, and cultivating said flowers, and in taking out flowers from the garden to the house to be used for decorating purposes in the house. However, during his approximate ten years of employment in the service of the said James Deering, deceased, for three winter seasons, beginning in approximately November of the year and ending approximately in April of the following year, instead of being employed as gardener in the Italian gardens, Mr. Pelchat was transferred during those three winter seasons, and was the night watchman during said time, at the entrance to the estate of James Deering, deceased."

The answer of defendant admitted that Boyle was in the employ of James Deering at the time of his death and had been employed by Mr. Deering since November 16, 1922. The answer admitted that Pelchat was employed by Mr. Deering at the time of his death; but denied that Pelchat began working for or was in Mr. Deering's continuous employ as alleged in the bill; but averred that Pelchat was not in the continuous employ of Mr. Deering until about June 25, 1925; and denied Pelchat had been in the continuous employ of Mr. Deering for two years prior to his

death. The answer stated that defendant was without knowledge as to whether Sarah Bethel went to work for James Deering on December 24, 1915; that she was occasionally employed as a helper by the day or week and never at any time employed for a period of more than two months; and was not in Mr. Deering's employ at the time of his death. The answer further averred that under paragraph five of the will, defendant determined that neither of complainants was a servant of Mr. Deering at the time of his death, and that they were not entitled to any bequests, and denied that they were entitled to bequests as alleged. The material part of the remainder of the answer asserted that defendant claimed the right to determine who were servants and the amount each should receive; but denied any claim to act arbitrarily, but only honestly and in good faith under the powers conferred on him by the will. The answer further admitted that claimants demanded and defendant refused to pay their claims; that defendant honestly and in good faith determined that only household or personal servants were entitled to bequests, and defendant denied that he acted or claimed the right to act arbitrarily.

The cause was referred to William T. McCaffrey, as Special Master in Chancery, and after the taking of testimony and filing of exhibits before him, he made these findings:

"FINDINGS OF FACT

"1. I find as a matter of fact that complainant, William J. Boyle, was employed as a plumber by the later James Deering continuously from November, 1922, to the date of the death of the said James Deering, his principal work being to attend to and keep in order the sprinkler system throughout the grounds and whatever plumbing work was necessary on the property.

"2. I find as a matter of fact that complainant, Sarah Bethel, was employed by the late James Deering, intermittently for a number of years, beginning in the latter part of 1916 up to July, 1925, as a helper, doing various chores about the servants' quarters and during the latter period of her employment doing laundry work for the house, but was not employed by the late James Deering at the time of his death.

"3. I find as a matter of fact that the complainant, Eli Pelchat, was in the employ of the late James Deering from November, 1916, to December, 1923, continuously, and from April, 1925, to the date of the death of the said James Deering, continuously.

### "Finding of Law

"1. I find that this court has jurisdiction of the subject matter of this cause and of the parties hereto; that the defendant appeared and answered herein.

"2. The record discloses that the testator was possessed of a very large fortune at the time of his death and for many years prior thereto, and always had in his employ a large number of people serving him in various capacities. No question of the testamentary capacity of the testator is raised, nor is it claimed that the testator was under any legal obligation to either of the complainants in this cause. Who was to share the testator's bounty and the manner of its determination was for the testator to say.

"3. It is evident by the clause of the Paragraph Fifth of testator's will, quoted *supra,* and under which complainants make their claim, that testator anticipated the very contingency that has arisen in this cause and with foresight prepared for it by giving to his executor, 'The exclusive right to determine who are my servants at the time of my death,

also the number of years' service they have respectively served and the amount of the bequests to which they are severally entitled.' That testator had unquestioned confidence in the ability and integrity of his executor is evidenced by his placing his vast estate into their care and management and clothing them with full discretion in determining who were to be the recipients or beneficiaries under numerous other provisions in his will.

"4. It is my opinion that the testator intended to and did vest in his executors the sole right to determine who should receive and the amount that they should be paid under Paragraph Fifth of testator's will, and where the intent is so evident it must, under well settled principles of law, be given effect.

"I therefore find that the equities of this cause are with the defendant and that complainants' bill of complaint should be dismissed with prejudice."

Eli Pelchat excepted to the findings of the Master substantially on these grounds; that the findings were contrary to the law; that the findings were contrary to the facts; that the findings were contrary to the law and the facts; that the findings were contrary to the evidence; that the findings were contrary to the law and evidence as prescribed by the Supreme Court of Florida; that the Master erred in holding that the Executor's findings as to length of service of Eli Pelchat was conclusive in point of law; that the Master erred in his third conclusion of fact that Eli Pelchat was not continuously employed by James Deering for a greater period than set out in said findings.

William L. Boyle and Sarah Bethel, by her husband and next friend, Clarence Bethel, excepted to the Master's report substantially on these grounds; that the Master erred in his findings of law as set out in Paragraph 2, 3 and 4 of

his findings of law; that the Master erred in finding the equities in the cause with the defendant and that complainants' bill of complaint be dismissed with prejudice; that the Master erred in finding that William L. Boyle was not entitled to take under testator's will; that the Master erred in finding that Sarah Bethel was not entitled to take under testator's will; that the Master erred in finding that Sarah Bethel was not in the employ of James Deering at the time of his death.

Eli Pelchat further excepted to the findings of the Master substantially on these grounds; that the Master erred in his findings of law as set out in Paragraphs 2, 3 and 4 of the Master's findings of law; that the Master erred in finding the equities of the cause with the defendant and that complainants' bill of complaint should be dismissed with prejudice; that the Master erred in finding that Eli Pelchat was not entitled to take under testator's will.

The Chancellor entered final decree in the cause in the following language:

"This cause came on to be heard upon the exceptions of the complainants to the 'Report and Findings of the Special Master' and upon Final Hearing, and having been argued by counsel for the respective parties and submitted to the Court for its decision and the Court having considered the same and being advised of its judgment in the premises, doth find:

"(a) That the complainant, William J. Boyle, was employed as a plumber by the late James Deering continuously from November, 1922, to the date of the death of the said James Deering; that the said complainant was properly excluded from a legacy under the Will of the said James Deering by the determination of the executor made under the authority vested in him by said Will:

"(b)   That the complainant, Sarah Bethel, was employed by the late James Deering intermittently for a number of years, beginning in the latter part of 1916 up to July, 1925, as a helper doing various chores about the servants' quarters and laundry work, but that said complainant was not in the employ of the said James Deering at the time of his death, and was properly excluded from a legacy under the Will of the said James Deering by the determination of the executor made under the authority vested in him by said Will:

."(c)   That complainant, Eli Pelchat, was in the employ of the late James Deering at the time of the death of the said James Deering, but had not been in the continuous employ of the said James Deering for two years or more prior to the death of the said James Deering; that said complainant is entitled to a legacy under the will of the said James Deering in the sum of One Hundred Dollars ($100.00) with interest thereon at the rate of eight per centum (8%) per annum from the 28th day of January, A. D. 1927;

"(d)   That the defendant has paid costs in this proceeding in the sum of Two Hundred Dollars ($200.00); that One Hundred Twenty-five Dollars ($125.00) of said sum was paid to the Special Master herein for his services, and Seventy-five Dollars ($75.00) of said sum was paid to the Special Master herein for the costs of reporting and transcribing the testimony herein; that the said fee of the Special Master in the sum of One Hundred Twenty-five Dollars ($125.00) should be borne by the defendant and the said costs of reporting and transcribing the testimony herein should be apportioned between and borne and paid

672

by the complainants and the defendants in the respective amounts set opposite under their respective names, viz.:

| | |
|---|---|
| William J. Boyle | $ 4.60 |
| Sarah Bethel | 27.60 |
| Eli Pelchat | 17.25 |
| Richard F. Howe, as executor | 25.50 |

And the remainder of the costs of this proceeding shall be borne by the respective parties paying the same:

"WHEREUPON, IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED:

"1. That the exceptions of the complainants, severally to the 'Report and Finding of the Special Master' be, and the same hereby are, overruled, and that the said Report be, and the same hereby is, confirmed, except as herein decreed;

"2. That the bill of complaint be and the same is dismissed as to the complainants, William J. Boyle and Sarah Bethel, joined by her husband and next friend, Clarence Bethel, severally;

"3. That the complainant, Eli Pelchat, do have and recover of and from the defendant, Richard F. Howe, as Executor of the Estate of James Deering, deceased, the sum of One Hundred Dollars ($100.00), together with interest thereon at the rate of eight per centum (8%) per annum, for the 28th day of January, A. D. 1927, to be levied of the goods and chattels, lands and tenements of said James Deering, deceased, in the hands of the said Richard F. Howe, as Executor of the Estate of said James Deering, deceased;

"4. That the costs of this proceeding shall be borne and paid as hereinabove set forth:

"5. That the defendant, Richard F. Howe, as Executor of the Estate of James Deering, deceased, do have

and recover of and from the complainant, William J. Boyle, his costs in his behalf sustained, which are hereby fixed and taxed at the sum of Four and 60/100 Dollars ($4.60) ;

"6. That the defendant, Richard F. Howe, as Executor of the Estate of James Deering, deceased, do have and recover of and from the complainant, Sarah Bethel, joined by her husband and next friend, Clarence Bethel, his costs in this behalf sustained which are hereby fixed and taxed at the sum of Twenty-seven and 60/100 Dollars ($27.60) ;

"7. That the defendant, Richard F. Howe, as Executor of the Estate of James Deering, deceased, do have and recover of and from the complainant, Eli Pelchat, his costs in this behalf sustained, which are hereby fixed and taxed at the sum of Seventeen and 25/100 Dollars ($17.25), which may be deducted from the foregoing judgment in favor of said Pelchat."

Complainants took an appeal from the final decree, assigning six errors.

In construing the meaning of Paragraph Five of the bill, the intention of the testator must be sought after; and the entire Will should be considered in order that light may be thrown upon the meaning intended to be expressed therein by the testator. See 28 R. C. 215, Sec. 175. From an examination of Paragraph Five in the light of a study of the will in its entirety, it is seen that the testator wanted to reward, after his decease all those servants who had been faithful to him during his lifetime; and his intention to endow those servants was expressed in Paragraph Five by requiring that they be in his service at the time of his death in order to receive the initial $100.00; and that they must have been in his employ continuously for the two years prior to his death in order to receive the *additional* sum of $300.00; and for additional continuous service, additional

bequests were given. The language employed must control rather than the language intended to be used or rather than the intention which existed in the mind of the testator. See 28 R. C. L. 215, Sec. 174, and cases cited.

There was no controversy as to the length of time William L. Boyle was employed, the answer of defendant admitting that he was employed from November 16, 1922, up to and including the date of Mr. Deering's death. The controversy was whether or not Boyle should be classified as a servant. The finding of the Special Master as well as that of the Chancellor was that Boyle was a plumber during that period of time, and was not able to take under the will because he was not a servant. The record shows that the majority of Boyle's work was that of making pipe fittings, pipe installation, and doing general work, both in the house and on the premises of the character usually classified as plumbing, though there was testimony to the effect that he was called upon to do other classes of work.

The broad classification of a servant is one who is retained, hired or employed in the business of another. One who, when required, assisted in the domestic labors of the house, though principally employed in aiding the intestate in a market which he kept, is a servant. *In re* Miller's Estate (Pa.) 1 Asm. 323, 327. Any person who works for another for a salary is a servant in the eye of the law. The work need not necessarily be menial or degrading. The period of hiring need not be for any particular length of time. The relation exists when one is willing from day to day to work for another and that other one desires the labor and makes his business arrangements accordingly. See Frank v. Herold, 63 N. J. Eq. 443, 52 Atl. 152. A servant is one who, for valuable consideration, engages in the service of another and undertakes to observe his di-

rections in some lawful business. Central Coal & Iron Co. v. Grider's Admr. 115 Ky. 745, 74 S. W. 1058. A servant must remain entirely under the control and direction of his master while that relation exists. See Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673; Singer v. McDermott, 30 Misc. Rep. 738, 62 N. Y. S. 1086; Baldwin v. Abraham, 57 App. Div. 67, 77, 67 N. Y. S. 1079; Hedge v. Williams, 131 Cal. 455, 63 Pac. 721, 82 A. S. R. 366. The Supreme Court of Appeals of Virginia in Ginter's Executors v. Shelton, 102 Va. 185, 45 S. E. 892, in holding a legacy to "all servants in my employ" included servants of all classes whether menial or not, said:

"The word 'servant' embraces many classes. It is a generic, and not a specific, designation. It would have been easy to confine the bequest to a class of servants, such as 'menial,' 'household,' or 'domestic,' if such had been the intention of the testator, but no such restraining purpose is shown. Our office is to find out the intention of the testator from the words he used, giving to them their usual or common meaning. It is not for us to interpolate words, or to indulge in strained construction, in order to effectuate a presumed intention. We are here to interpret a will, and not to make one."

It appears from the record that Boyle had assumed the relation of servant to James Deering and was entitled to share under the will as a servant regardless of the fact that the majority of his work was in the nature of plumbing work, because he was liable to be called upon for other kinds of work, and in such position may be classified as a servant.

The controversy as to Sarah Bethel was whether she had served continuously for the requisite period in the employ of James Deering, and whether she was in the employ

of James Deering at the time of his death. The record shows that she entered the employment of James Deering in 1915; and except for the first two years, would work during the period from about September 15th to about the following July 15th, and then be idle from July 15th, to September 15th during which time the main house was closed. The last time she personally worked for James Deering was in March, 1925, when she became too sick to work; but her daughter substituted for her until the end of the season in July, 1925. From that date until the death of Mr. Deering, neither Sarah Bethel nor her daughter worked for James Deering, but it was during the summer season when it was her usual custom not to work there; and the death of Mr. Deering occurred in the fall of 1925 before the main house was reopened for the winter season. Both the Special Master and the Chancellor found that she was not in the employ of James Deering at the time of his death, and that she was not employed by him continuously for the requisite period. It appears from the payroll record of Sarah Bethel, made an exhibit in the cause, that her employment was not continuous, because it was broken each summer by a period of several months idleness. From the record of her employment, it appears that she usually returned to work about September 15th, each season; and since she had not been discharged and was ready at all times to be called to work upon the opening of the main house, and if Mr. Deering had not died at that time but had moved to Florida for another winter season and had reopened the main house before his death, would probably have been called to work and would have been in Mr. Deering's service at the time of his death, so it may be said, under the circumstances, that she was in the employ of James Deering at the time of his death so as to entitle her to the bequest of $100.00.

The payroll record of Eli Pelchat shows that he was in the employ of James Deering at the time of his death, which entitled Pelchat to the $100.00 bequest allowed him by the Chancellor; but that he had not been continuously in the employ of James Deering for two years prior. to his death. There was a break in his employment from December 4, 1924, to April 9, 1925, which was the period when he worked for Mr. Winston. The testimony as to whether Pelchat had been loaned to the Winstons or whether he was hired directly by the Winstons was in conflict. There was nothing in his payroll record to show that he had been loaned. There was ample testimony to sustain the Chancellor's finding that Pelchat was hired for this period by the Winstons and not loaned to them, thus breaking his continuity of service for James Deering.

In view of the fact that the construction of the will and of the acts of the Executor are primarily for the benefit of the estate, all costs are taxed against the estate. See. Howe v. Fry, *supra*.

On rehearing the final decree of the Chancellor is affirmed as to the amount awarded Pelchat as his bequest; and reversed as to Bethel and Boyle, and the Chancellor ordered to enter a decree in favor of each in conformity with this opinion; and the decree as to costs is reversed, all costs being taxed against the estate.

It is so ordered.

WHITFIELD, C. J., and ELLIS, TERRELL, BUFORD and DAVIS, J. J., concur.

BROWN, J., dissents.