RICHARD F. HOWE, as Executor of the Last Will and Testament of James Deering, deceased, v. SAMUEL SANDS, *et al.*

194 So. 798
En Banc
Opinion Filed February 20, 1940
Rehearing Denied April 2, 1940

814

F. M. Hudson, Henry P. Adair, John M. McNatt, Hudson & Cason, Adair, Ken, Ashby & McNatt, for Appellant.

E. P. Ellis, Lilburn R. Railey and Walsh & Ellis and Van C. Swearingen, for Appellees.

CHAPMAN, J.—On October 25, 1938, plaintiff below, as Executor of the Last Will and Testament of James Deering, appellant here, filed in the Circuit Court of Dade County, Florida, a bill of complaint against some thirty-seven persons therein named, who claimed bequests under the Last Will and Testament of James Deering, deceased, and paragraph five of the Will is, viz.:

"FIFTH: I give and bequeath to each servant in my employ at the time of my death the sum of One Hundred Dollars ($100.00). To each of said servants who has been in my continuous employ for two (2) years prior to my death I give and bequeath an additional Three Hundred Dollars ($300.00); to each of said servants who has been in my continuous employ for more than two (2) years

prior to my death I give and bequeath an additional Three Hundred ($300.00) for each year's continuous service beyond said two (2) years. To the Executors hereof I give the exclusive right to determine who are my servants at the time of my death, also the number of years' service they have respectively served and the amount of the bequests to which they are severally entitled."

The record discloses that James Deering died September 21, 1925, and the value of his estate at that time was estimated at between fifteen and twenty million dollars. He owned a substantial residence situated on some 185 acres in Dade County, Florida, and was occupying this property as a home at the time of his death and employed some 71 persons in and about this home or estate near Miami, Florida. Some 13 were employed as cooks, maids, chauffeurs, laundresses, housemen, footmen, valets, butlers, and housekeepers. The executor determined that these 13 servants came within the provisions of paragraph Five of the Will, while 55 of the 71 employees were employed as foremen, bookkeepers, gardeners, engineers, watchmen, carpenters and other laborers. The executor determined that these 55 employers were not servants, neither were they benefited by the terms of paragraph Five of the Will, *supra.* The prayer of the bill was for the entry of a final decree: (a) to the effect that the determination of the executor be final and conclusive under paragraph Five of the Will, *supra;* if the persons named were servants and entitled to bequests, that the Court decree the number of years of service and amount of the bequests; (c) decree the amount of interest, if any, due on each bequest.

Most of the defendants filed answers to the bill of complaint in which it was admitted that the executor made determinations under the provisions of paragraph Five of the Will, but that the said determinations so made by the

executor were unreasonable and arbitrary and not the intent of the testator. On final hearing the lower court decreed: (a) that 37 of the defendants below were servants and entitled to share as legatees, and the principal amount decreed due should bear interest at 8% per annum from January 28, 1927; that defendants were not entitled to any amount for fractional years; that the employees named in the bill of complaint were servants under the provisions of paragraph Five of the Will, *supra*.

From this final decree an appeal has been perfected to this Court and the case is here for review. Paragraph Five of the Last Will and Testament of James Deering has been considered and construed by this Court in the cases, viz.: Howe v. Lowe, 103 Fla. 1196, 133 So. 549, 137 So. 521; Howe v. Fry, 116 Fla. 528, 157 So. 331; Boyle v. Howe, 126 Fla. 662, 171 So. 667. The members of this Court were equally divided in Howe v. Lowe v. Fry, *supra*. It is contended that there should be a re-examination of the law and facts due to two changes in the personnel of the Court since the decisions, *supra,* were adopted.

Counsel for appellant contends that the lower court erred in decreeing that the 37 defendants were servants within the meaning of paragraph Five of the Will and entitled to share as legatees. The lower court's ruling as expressed by the terms of the final decree is bottomed on the case of Boyle v. Howe, 126 Fla. 662, 171 So. 667, and holds that paragraph Five should be liberally construed in favor of the legatees.

The case of Boyle v. Howe, *supra,* shows that: (a) Eli Pelchat worked as a gardener in the Italian flower garden. He was required to take care of the flowers and had worked for James Deering about ten years at the time of the testator's death. This Court held that he was a legatee under paragraph Five and approved the bequest; (b) William

Boyle was employed as a plumber from November, 1922, to September 21, 1925, the time of the death of James Deering, and this Court held that he was a legatee under paragraph Five of the Will, *supra;* (c) Sarah Bethel was employed as a helper, doing various chores about the servants' quarters and as a laundress for the Deering home, and this Court held that she was a legatee under paragraph Five of the Will and awarded her the bequest named therein.

Paragraph Five, *supra,* provided: "To the Executors hereof I give the exclusive right to determine who are my servants at the time of my death, also the number of years' service they have respectively served and the amount of the bequests to which they are severally entitled." It will be observed that the language employed made it the duty of the executor under the Will to inquire into, consider and determine the name or names of the employees who could be classified as servants of Mr. Deering for the required period next to and prior to his death and fix the amount of the bequest, respectively, as the Will prescribed.

The decedent had employed a number of persons as household servants and had also employed a number of other persons about his estate in duties that did not immediately pertain to the household service. The question to be determined is whether the executor arbitrarily and illegally determined that the complainants were not "servants" within the meaning of the quoted provision of the will. The valid intent of the testator controls. The testator had a right to select the objects of his bounty and to authorize his executor to determine what persons were the testator's "servants" and entitled to the bequests made. If the determination of the executor as to who were the servants of the testator within the intent of the will is not arbitrarily arrived at, but is a reasonable determination in

view of the language of the will and the circumstances affecting the identity of the persons intended to take the bequests, the courts will not interfere with the executor's determination, no rule of law or public policy being violated.

The executor testified that he had heard the testator "speak of his servants a good many times and he made a distinction between his servants and what he would call his employees; by servants, he intended to mean his household servants."

It is well established law, that in the construction of a will the entire instrument will be considered for the purpose of determining the intent of testator, and, if such intent so ascertained is not contrary to law or public policy and is capable of being made effective to carry out the intent and objects of the will, it becomes the duty of the court, in the absence of a showing to the contrary, to carry out the intent of the testator. See Mosgrove v. Mach, 133 Fla. 459, 182 So. 786; Sternberg v. Florida National Bank, 114 Fla. 580, 154 So. 844; Husson v. Bensel, 124 Fla. 304, 168 So. 395; Wallace v. Wallace, 118 Fla. 844, 160 So. 377. In the early case of Russ v. Russ, 9 Fla. 105, it was held that the intention of the testator is the polar star to guide in the construction of the will. In State v. Beardsley, 77 Fla. 803, 82 So. 794, it was said that it is the duty of the court to give effect to such intention from the entire will where it can be ascertained from the will. It is the intention which the testator expresses in his will that controls and not that which he may have had in his mind. See Rewis v. Rewis, 79 Fla. 126, 84 So. 93. A Will should be so construed by the courts as to effectuate the testator's lawful intent as gathered from a consideration of all the provisions as expressed in the will. See Perkins v. O'Donald, 77 Fla. 710, 82 So. 401.

Paragraph Five of the Will gave to the Executor the exclusive right to determine who were the servants at the time of his death, the number of years of service, and the amount of the bequests to which each was entitled. The intention of the testator was clear, free from ambiguity, and expressed in language free from doubt. The authorities hold that the power to make such a provision is valid. In Redfearn on Wills & Administration of Estates, par. 203, page 333, it is said:

"203.—Creation and Exercise of Powers.—The cardinal rule that the intention of the testator, if legal, is to control applies in determining whether a power has been created or not by the will. No particular words are necessary for the creation of a power; any words are sufficient which indicate clearly an intention on the part of the testator to create a power. However, for a power to be valid, the purpose for which it is created must be legal. A power may be created by the implication. For illustration, if a testator directs that his estate be sold at private sale without the order of any court for the purpose of paying debts or for distribution, but fails to state that the executor is to make the sale, the courts will construe such power of sale to be in the executor by implication. * * * "

In Pray v. Belt, 1 Peters (U. S.) 670, 7 L. Ed. 309, a provision of a will then before the court was, viz.: "Whereas, my will is lengthy, and it is possible I may have committed some error or errors, I do therefore empower, as fully as I could do myself, if living, a majority of my acting executors—my wife to have a voice as executrix— to decide in all cases, in case of any dispute or contention: whatever they may determine is my intention shall be final and conclusive, without any resort to a court of justice." The United States Supreme Court upheld the above provision and stated that such a clause should receive such a

judicial construction as would comport with the reasonable intention of the testator.

In the case of American Board of Com'rs of Foreign Missions v. Ferry, Executor, 15 Fed. 696, the court held that a testator in his will may designate his executor as umpire and invest him with power to construe his will and determine every doubtful question that may arise touching the testator's intention, and if the umpire honestly and in good faith exercised the power conferred by the will, his decisions will be upheld.

The above principle of law is recognized by Schouler on Wills, Executors & Administrators, Vol. 2 (6th Ed.) par. 946, page 1094, viz.:

"946. Language Taken According to the Testator's Situation.—Here, let us observe, of the testator's language, that the rule which seeks to discover one's real intention requires that language be taken, so far as may be, according to the testator's own situation and surroundings; according to the time and place in which he lived, and the manners and institutions which moulded his character or to which on the whole he had the most probable referenece. For the language of wills, as courts have observed, is not of universal interpretation, having the same precise import in all countries and under all circumstances; but they are commonly supposed to speak the sense of the testator according to the received laws or usages of the country where he is domiciled, by a kind of tacit reference; supposing, of course, that there is nothing in the language he uses which repels or controls such a conclusion. Yet every will should be interpreted, as far as possible, from the standpoint apparently occupied by the testator; and attendant circumstances, such as the condition of his family and the amount and character of his property, may and ought to be taken into

consideration, as part of the *res gestae* where the language is not plain nor the meaning obvious. * * *"

See Thompson on Construction of Wills, pars. 590 to 609, pages 757 to 781, inclusive; Remsen on the Preparation and Contest of Wills, pars. 1 to 9, pages 281 to 292, inclusive; Wait v. Huntington, 40 Conn. 9; Moore v. Harper, 27 W. Va. 363; Greene v. Huntington, 73 Conn. 106, 46 Atl. 883; Couts v. Holland, 48 Tex. Civ. App. 476, 107 S. W. 913; In *Re:* Phillips (Pa.), 48 Leg. Int. 232, 28 Wkly. Notes Cas. 229; Grant v. Stephens (Tex. Civ. App.), 200 S. W. 897; Talladaga College v. Callahan, 197 Ia, 556, 197 N. W. 635. · See also Annotation in 104 A. L. R. 359.

In the construction and interpretation of wills the courts are bound to observe and respect the intention of the testator determined by a study and examination of the will as an entirety. Paragraph 5, *supra,* grants to the executor the exclusive power to determine who were the servants of James Deering at the time of his death, the number of years of service of each servant and the amount of bequests to each. The courts sustain such a grant of power and when the power is exercised by an executor the same is conclusive and binding, in the absence of bad faith, or fraud, or a showing of arbitrary action on the part of the executor in performing his duties under paragraph 5 of the will.

The record here shows that the executor determined that some thirteen of the seventy-one employees were servants and should be paid under the provisions of paragraph 5 of the will, and that the others were not servants of the late James Deering. The lower court, in its final decree, omitted or declined to recognize the power of the executor to determine according to paragraph 5 of the will who were the servants of the late James Deering at the time of his death, but held that all the defendants named were

servants. The amount or amounts determined to be due by the executor should bear interest at the rate of 8 per cent per annum after January 28, 1927, until paid. The number of years of service and the amount of each bequest can be fixed by the lower court. We think the lower court applied to the case at bar the improper principle of law, which requires a reversal of the final decree appealed from.

The decree appealed from is reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

It is so ordered.

TERRELL, C. J., WHITFIELD, P. J., and BROWN, J., concur.

BUFORD and THOMAS, J. J., dissent.