**RAYMOND MARSHALL, as Executor of the Estate of J. B. Hewett, deceased, J. L. Hewett, Melton Hewett, Viola Hewett Marshall and Margaret Hewett, v. WILLIE HEWETT.**

24 So. (2nd) 1                                         June Term, 1945
December 7, 1945                                       Division B

*J. M. & H. P. Sapp,* for appellants.

*H. V. McClellan* and *Marion B. Knight,* for appellee.

SEBRING, J.:

J. B. Hewett died leaving a will which was admitted to probate on June 13, 1944. Thereafter, a suit in equity was filed by the executor for a construction of the will so far as it pertained to the disposition of the real and personal property in favor of the widow of the deceased. All persons interested in the subject matter of the will were made parties to the

suit. The will after providing for the payment of the testator's debts proceeds as follows:

"I give and bequeath unto my beloved wife, Willie E. Hewitt, all of my property, both real and personal, to be used for her support and maintenance but not to dispose of any real estate, and at the death of my wife, Willie E. Hewett, my said property shall be divided as follows:

" 'To my Granddaughter, Viola Hewett Marshall, the SW¼ of NE¼, and S½ of SE¼ of NW¼, Section 23, Twp. 2 North, Range 9 West, and known as the Jeremiah Ayers place. To my Grandson, Melton Hewett, the N½ of SW¼, Section 2, Twp. 1 South, Range 9 West, and known as the home place.'

"The balance of my said property, both real and personal, shall be divided equally between the following: Margaret Hewett, J. L. Hewett, Melton Hewett and Viola Hewett Marshall. The real estate owned by me at this time in addition to the above described land is as follows: The Glass place consisting of 120 acres; 260 acres of woodland land located in the Carr Community; 40 acres of woodland land near J. H. Curlee's and 1 lot in Altha, Fla."

Upon final hearing the chancellor entered a decree finding that the will devised and bequeathed to the widow a life estate in all of the testator's property, both real and personal, and vested in the widow, after payment of debts and funeral expenses, the possession, charge and control over all of said property with the right to have the rents and receipts therefrom during her lifetime; and that at the death of the widow, so much of the personal property as remained and had not been used or disposed of by the widow for her support and maintenance during her lifetime, together with all the real property, became and was the property of the several residuary and remainder legatees named in the will.

The executor and the residuary and remainder legatees named in the will have joined in an appeal and question the correctness of the decree. They maintain that by the terms of the will the widow is not entitled to possession, custody and control of the assets of the estate of the deceased, but that such assets should remain in the hands of the executor,

as trustee, to be used by him for the maintenance and support of the widow during her lifetime, the corpus to be delivered into the hands of the residuary and remainder legatees at her death.

We find ourselves unable to agree to the construction of the will contended for by the executor, and are of opinion that the interpretation placed upon it by the chancellor is more in accord with the testator's intentions, as reflected by the record.

In a will construction the primary objective of the courts is to ascertain and give effect to the intentions of the testator. Dean v. Crews, 77 Fla. 319, 81 So. 479; Cole v. Cole, 88 Fla. 347, 103 So. 78. In the ascertainment of such intention the will in its entirety will be considered, and when once the intention has been discovered the wording of the will will be given such liberal construction and interpretation as will effectuate the intention of the testator so far as may be consistent with established rules of law. If there are expressions in the will which are difficult to reconcile, then the situation of the testator at the time he made his will, the ties that bound him to the objects of his beneficence, the motives that prompted him to make the will he did make, and the influences that wrought on him at the time, will be considered in arriving at the purpose of the testator. Roberts v. Mosley, 100 Fla. 267, 129 So. 835.

We learn from the record that Mr. and Mrs. Hewett were an aged couple who had been living on a farm in Calhoun County for many years, where as a result of hard labor they had accumulated the modest estate which is the subject of this controversy. By a previous marriage Mrs. Hewett had borne one son who was more than fifty years of age at the time of the death of the testator. As a result of her subsequent marriage to Hewett, Mrs. Hewett had borne two sons— one who had died without issue and one who had died and left a widow and three children. The widow of the deceased son and the three grandchildren are named in the will of Hewett as remainder and residuary legatees. Mr. Hewett is described in the testimony as being a man who was "illiterate, unlearned, and unfamiliar with legal terms and verbiage." Ap-

proximately fifteen months prior to his death Hewett procured the services of a friend, who was not a lawyer, to draw his will, and discussed with the latter the manner in which he wished his estate to be distributed. He explained to this friend that he had ample property to take care of Mrs. Hewitt for the rest of her days, and that upon his death he wanted the property used for that purpose. With reference to the actual possession and control of the property Hewett declared that it was his desire and intention "that Mrs. Hewett have complete and absolute charge of [the] personal property during her lifetime and custody and control of the real property and the rents therefor and at the time of her death such personal property as [might] remain, if any, together with the real [property] . . . then to be in charge of by the executor and distributed according to the will." Endeavoring to follow the instructions given him, the friend prepared a will that he thought expressed the intentions of the testator, and J. B. Hewett signed it by placing his mark thereon in the presence of his witnesses.

The circumstances surrounding the testator at the time he executed his will make it clear, we think, that the first concern of the testator was his aged widow who had borne and raised his children and who had labored with him through the years in the accumulation of his estate. Such testimony was admissible for the purpose of making clear the desire of the testator as to the possession, custody and control of his property after his death—a question that might have given rise to some doubt except for such testimony. The testator's first desire was that his widow should have possession of all of his property during the few short years left her, with the right to the income, uses, and fruits thereof coupled with the power to sell or otherwise dispose of the personalty should it become necessary for support and maintenance; and at her death all real property and whatever was left of the personal property to go to his daughter-in-law and his grandchildren. There is nothing in the verbal directions given by J. B. Hewett to the draftsman of his will that can be said to be inconsistent with the language of the will as finally drafted. In providing in the will that all of his real and personal property should go

to his widow "to be used for her support and maintenance but not to dispose of any real estate" and that upon her death certain specifically described real property should go to two of the grandchildren, and that the "balance" of the property both real and personal should be divided equally between all grandchildren and the daughter-in-law, we think that the testator intended the creation of a life estate in both realty and personalty, with power in the widow to encroach upon the principal of the personalty should she deem such step necessary for her support and maintenance.

As an incident to the life estate in the realty, the wife becomes entitled to the exclusive use and occupation of the property with the right to such rents, issues and profits as are derivable therefrom without waste or diminution of the corpus during the continuance of the estate. 33 Am. Jur. 703, Life Estates, Remainders, etc., Sec. 219. The conversations of the testator prior to his death make it plain that as to the personality, the assets of the testator are to be kept intact in the possession of the widow so that as life tenant she may enjoy the usual usufructs, and at the same time have such personal assets available for encroachment upon the principal for reasonable support and maintenance.

The executor, who is one of the moving parties to this appeal, argues that if any weight is to be given testimony relative to the circumstances surrounding the parties at the time of the execution of the will for the purpose of arriving at the testator's intentions, he should have been permitted to plead and prove at the trial that the testator "felt and feared that should his wife, Willie E. Hewett, survive him and be left the management and control of his estate that she would permit the same to be consumed and dissipated by her son and child by her former marriage," and that he was laboring with such fear when he executed his will. The answer to the contention is that had the chancellor allowed such fact to be pleaded and proved, that fact standing alone would not have been sufficient to have overcome the testimony offered by the widow, as to possession, custody and control of the property.

The question has been raised whether or not the court may require security from the life tenant for the benefit of

the remaindermen to protect the latter from undue waste or encroachment upon the principal of the personalty during the term of the life tenancy. There is authority to the effect that upon a proper showing being made that the principal of the personalty is being unduly wasted or depleted or threatened with undue waste or depletion by the life tenant to the detriment of the remaindermen a court of competent jurisdiction has power to require security from the life tenant. No such showing has been made in the case at bar, however, and consequently we leave the question open for decision until such a case shall have been presented.

The decree appealed from is affirmed.

It is so ordered.

CHAPMAN, C. J., BROWN and THOMAS, JJ., concur.