Suit by the First National Bank of Tampa, as executor under the will of Charles E. Fifield, deceased, against the Christian Herald Association, Inc., and others for a declaratory decree construing the will. From a decree holding one paragraph of the will invalid, defendants appeal.
Reversed, with directions.
The First National Bank of Tampa, as Executor of the last will and testament of Charles E. Fifield, deceased, exhibited its bill of complaint in the Circuit Court of Hillsborough County, Florida, under the provisions of the Declaratory Judgment Act, F.S.A. § 87.01 et seq., and prayed for a declaratory decree against the Christian Herald Children's Home, a corporation under the laws of the State of New York, the Christian Herald Association, Inc., a corporation under the laws of the State of New York, the Christian Herald, a corporation under the laws of New Jersey, now dissolved, and many other defendants claiming as legatees and otherwise under the last will and testament of Charles E. Fifield, deceased.
The answer of the defendants-appellants set out changes in the corporate structure and the dissolution of the Christian Herald, a New Jersey corporation, and the organization of the Christian Herald Association, Inc., as a charitable corporation under the Membership Law of the State of New York, and alleged the transfer and assignment of all the assets of the dissolved corporation (Christian Herald, a corporation under the laws of New Jersey) to the Christian Herald Association, Inc., as organized under the laws of the State of New York. The answer set out that there was but little, if any, interruption in the transaction of all corporate functions in the transfer from the dissolved New Jersey corporation to the New York Corporation, supra. The transfer or assignment occurred during the year 1928.
Testimony was adduced by the respective parties and on final hearing the Chancellor below entered a decree holding Section 12 of the Fifield will invalid. On appeal here by the Christian Herald, it is contended that the Chancellor's ruling was erroneous because: (1) the cy pres doctrine of construction was not applied to the Fifield will; (2) the construction given to Section 12 is not supported by the intention of the testator gleaned from the instrument as a whole; (3) the language of Section 12, when considered with the other provisions of the will, shows that the testator intended that his property — should not be given to his relatives — but should be used "for charitable purposes only".
Pertinent parts of the will are viz:
"1. I give, devise and bequeath to my executor, hereinafter named, all of the property of every kind and character, wherever the same may be situated, which *Page 565 
I may own at the time of my death, upon the uses and trusts hereinafter set out.
"2. I desire that all my just debts shall be paid and that a suitable monument, properly inscribed, be placed on my lot in Myrtle Hill Cemetery, near Tampa, Florida.
"3. I bequeath the sum of One Thousand Dollars ($1000.00) to the Salvation Army of Tampa, Florida.
"4. I give, devise and bequeath to my cousin, George S. Fifield, now of Newfield, New Hampshire, the sum of One Hundred ($100.00), but if he should not be living at the time of my death, I give this amount to the Salvation Army of Tampa, Florida.
"5. I bequeath to my cousin, Fredmah S. Smith, now of Tampa, Florida, or wherever he may be, the sum of One Hundred ($100.00) Dollars, but if he be not living at the time of my death, I give this amount to the Salvation Army of Tampa, Florida.
"6. I bequeath to my cousin, John Scammon, now of Exeter, New Hampshire, or wherever he may be, the sum of One Hundred ($100.00) Dollars, but if he be not living at the time of my death, I give this amount to the Salvation Army of Tampa, Florida.
"7. I bequeath to John Darling Lodge No. 154, F.A.M. of Tampa, Florida, the sum of Two Thousand ($2000.00) Dollars, and I bequeath to the Florida Masonic Home of St. Petersburg, Florida, the sum of Five Thousand ($5000.00) Dollars, and while it is not a condition on which these bequests are given, that they shall do so, I hope that they will only use the interest of the two funds given in this item.
"8. I give and bequeath to The Christian Herald Children's Home, a corporation created by and existing under the laws of the State of New York, the sum of Fifteen Hundred ($1500.00) Dollars, for the endowment of three cots, in the name of Charles W. Fifield, Susan D. Fifield and Charles E. Fifield.
"9. I bequeath to my cousin, Mary Scammon Chase, now of Stratham, New Hampshire, all of my silverware and jewelry, and the cedar chest I own, with all of its contents.
"10. I bequeath to my cousins, Mary P. Chase, Ella F. Smith and Nellis A. Stockbridge, all now of Stratham, New Hampshire, and my cousin, Mae S. Sanborn, of Newburyport Massachusetts, and the survivors of them, all article and personal property in my house, which they may choose, the same to be divided among them equally, but if any of these are dead, their surviving children shall take their interest hereunder.
"11. I also direct that the sum of Four Hundred ($400.00) Dollars be set aside to be used for the expenses of Nellie A. Stockbridge, or any of her heirs, to come to Tampa to make selections of the personal property for themselves and other heirs as mentioned in Paragraph 10 of this will, and also out of said sum to pay for the packing and shipping of the personal effects given to Mary Scammon Chase in Paragraph 9 of this will.
"12. I give, devise and bequeath my home, comprising approximately three and one half acres, located at 4421 Bayshore Boulevard, also known as `Shady Nook', bounded on the North by what is known as Lawn Avenue, on the East by Bayshore Boulevard, on the South by what is now known as Fair Oaks Avenue and on the West by Bayshore Crest Subdivision, and also, all the remainder of my property, real, personal and mixed, to the Christian Herald, a corporation created by and existing under the laws of the State of New Jersey; the same to be used for charitable purposes only.
"13. I hereby appoint William Hunter, of Tampa, Florida, to be my executor, and if, necessary, as Trustee under this will, and give to my said executor and trustee full power and authority, without making application to any Court, to make any and all sales of any or all of my property, both real and personal, not specifically bequeathed, and convert the same into cash, in order to pay legacies or debts, or any other proper charges against me or my estate, and for that purpose my said executor is authorized to make and execute any and all deeds of conveyance that may be necessary to sell and convey any of said property to purchasers thereof. *Page 566 
"In case my said executor above named, shall not be alive at the time of my death, or shall, for any reason, not act as such, then I direct that the First National Bank of Tampa, Florida, shall be executor and trustee under this will, with all powers herein given to such executor.
"If any person, or persons, who are beneficiaries under this will, or any other person, shall make, or cause to be made, any contest, or attempt to interfere in any way, with the disposition of my estate hereunder, such person or persons shall not be entitled to receive anything under this will, or out of my estate, but the same shall go to the residuary legatee hereunder.
"14. I direct that all of the specific legacies herein given, shall be paid in full, free of all costs, charges and inheritance taxes, and if inheritance taxes are due from my estate, I direct that the same shall be paid out of the residuary estate herein granted, so that the specific legacies and devisees may be free from such inheritance taxes".
Dr. Daniel A. Poling testified that he was editor of the Christian Herald Magazine and president of the Christian Herald Association and had been connected in an official capacity with the organization since 1925. The Christian Herald, prior to 1928, solicited, accepted and expended said funds through such charitable enterprises as (a) the Children's Home; (b) Bowery Mission; (c) the Industrial Home at Foochow, China, and (d) Memorial Home in Florida. The moneys so received were expended for charity through these agencies. The headquarters or activities of the Christian Herald, a New Jersey corporation, were held at the Bible House in Astor Place, New York City, or at 419 Fourth Avenue. The Christian Herald Magazine was published by the Christian Herald, a New Jersey corporation.
Dr. Poling testified that the New York corporation continued after 1928 all the charities previously conducted by the New Jersey corporation. The Christian Herald continued to accept gifts for charities and passed the same on to the charitable organizations to be expended for these purposes. Some of the funds received were spent through the Bowery Mission, of which Dr. Poling was president. The Bowery Mission was a rescue mission — and had rendered services to derelicts for more than fifty years coming to New York from around the globe and all over the world. The mission had a dormitory, fed and slept these unfortunates, and conducted religious services and helped to rehabilitate all and assisted in getting jobs for them. Dr. Poling described the Bowery as a "physical, moral and spiritual rehabilitation center".
The Christian Herald Children's Home, according to Dr. Poling, had been operated for more than half a century for the underprivileged children of the urban area in New York City. The children of Jewish, Catholic and Protestant faiths were cared for alike. The undertaking in the beginning was seasonable but buildings were reconstructed and the undertaking is now a year-round project. The children coming into the Home are underprivileged and those who cannot pay or are unable to go to any other place. Two orphanages are maintained at Foochow, China — one for boys and one for girls. The children accepted are orphans created by various floods and brigands in the China area. These children are trained and taught a trade, and upon leaving these orphanages are self supporting. Some of them are now associated with the central government of China. Funds solicited and received for charity through the Christian Herald Magazine, when published under the laws of the State of New Jersey, prior to June, 1928 and since under the laws of New York, have been spent exclusively for charitable purposes through the agencies (a) the Christian Herald Children's Home; (b) the Bowery Mission; (c) the Industrial Home at Foochow, China; (d) the Orphanages in Foochow.
The Christian Herald has been published each week for approximately 71 years without missing a single weekly issue. The last issue of the Christian Herald as published under the laws of the State of New Jersey prior to dissolution was dated in June, 1928, and the next succeeding weekly issue was published by the Christian Herald, a corporation organized under the laws of *Page 567 
the State of New York. When the testator in 1935 executed his last will and testament the Christian Herald, a corporation existing under the laws of the State of New Jersey had been dissolved but the Christian Herald, a corporation organized under the laws of the State of New York, was the successor in interest to all the holdings and the charitable agencies of the dissolved New Jersey corporation. The reorganization or change in the corporate structure did not change the established charitable policy of the Christian Herald. The Chancellor held that Section 12 of the will lapsed and became invalid under the provisions of Section 731.20, F.S.A., upon the dissolution in 1928 of the Christian Herald, a corporation existing under the laws of the State of New Jersey. It was his view that the cy pres doctrine was inapplicable to the controversy.
We have held on many occasions that the intention of the testator is to guide the courts in the construction of wills. Murphy v. Murphy, 125 Fla. 855, 170 So. 856. In construing a will, the testator's intention must be determined and the whole will should be considered in order that light may be thrown on the meaning intended to be expressed. Boyle v. Howe, 126 Fla. 662, 171 So. 667. In ascertaining the testator's intention, the will in its entirety will be considered, and when once the intention has been discovered, the wording of the will will be given such liberal construction as will effectuate the intention of the testator as may be consistent with established rules of law. Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1.
Paragraph 1 of the will gave to the executor thereof all property owned by the testator at the time of his death upon the uses and trusts enumerated in the will from paragraphs 2 to 14, inclusive. It is admitted that the testator had no lineal descendants and his closest relatives were cousins from both the paternal and maternal sides of his family. The testator chose to make some of the cousins recipients of his bounty, as shown by paragraphs 4, 5, 6, 9, 10 and 11 of the will, but many of his cousins whose names appear in the record were not by the testator remembered in his last will and testament. All articles of personal property in his home were given to named cousins and the sum of $400.00 for expenses necessary to remove them to Newburyport, Massachusetts. He gave his jewelry, silver ware and cedar chest to another cousin and the sum of $100.00 to each of three cousins. The value of the gifts made to these cousins is small when considering an estate valued at $75,000.00.
If the size or value of the gifts made to charitable agencies or organizations enumerated in the will is a just criterion as to the intention of the testator, then it is safe to conclude that his intention was charity rather than sharing his bounty with his distant relatives, as paragraph 3 of the will is a gift of $1,000.00 to the Salvation Army of Tampa, Florida. Paragraph 7 is a gift of $2,000.00 to Masonic Lodge No. 154 of Tampa; also $5,000.00 to the Florida Masonic Home of St. Petersburg, Florida. Paragraph 8 is a gift of $1,500.00 to the Christian Herald Children's Home of New York. Paragraphs 4, 5 and 6 are gifts of $100.00 to each of three named cousins, but with a proviso in each paragraph supra to the effect that if the named cousins be not living at the time of testator's death, then said sum shall be a gift and paid to the Salvation Army of Tampa, Florida.
The lower court held that the legal effect of the dissolution in 1928 of the Christian Herald, a corporation existing under the laws of the State of New Jersey, was to render invalid paragraph 12 of the will under section 731.20, supra, which provides: "(1) If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to such devisee or legatee lapses, unless an intention appears from the will to substitute another in his place; * * *." Likewise the cy pres doctrine of construction was inapplicable to the will.
The dominant thought or idea of the testator, gleaned from the four corners of his will, was that the corpus of his estate, with minor exceptions, should be used for charitable purposes. The agency, Christian Herald, was the vehicle chosen by the testator to accomplish his purpose. If it was his intention or desire that his relatives should have his property, he failed so to state in his will. He gave certain sums to *Page 568 
named relatives but others he failed to remember, although the decree here challenged gave the property to the maternal and paternal heirs of the testator.
The case of Lewis v. Gaillard, 61 Fla. 819, 56 So. 281, 284, involved the construction of a will of the late James D. Westcott, who died in Leon County, Florida, April 29, 1887, and at the time of his death owned considerable property, both real and personal, situated in Leon County, Florida. Pertinent parts of his will are viz:
"I direct one thousand dollars to be given or paid to Mrs. Mary Archer, and three thousand dollars to my aunt, Miss Emma Westcott of St. Augustine. The rest of my estate, I wish held in trust for the benefit of The West Florida Seminary, the institution located at Tallahassee, with which Col. Rivers is connected.
"I wish only the interest upon the principal used yearly, and in this and in all other matters my executor is hereby given authority to change investments of funds in his discretion. If, however, he should not qualify, then the investment may be changed by the officers controlling the institution. I wish at least one-half of this interest expended for the benefit of students of Leon county under the direction of the managing officers of the institution. I wish none of it used for buildings or improvements of grounds."
James D. Westcott left no lineal descendants, but distant relatives brought suit and contended that the Westcott will had lapsed and was invalid because the West Florida Seminary was abolished by Chapter 5384, Acts of 1905, Laws of Florida, and the Florida Female College established by the terms of said Act could not be the lawful recipient of the bounty of the Westcott will. This contention was brushed aside and this Court held that the Florida State College for Women should receive the income from the residuary estate. We said, "Equity looks at substance rather than the strict letter and we fail to find such hiatus or break in the continuity of the institution as to cause us to declare a forfeiture". The cy pres doctrine is now almost universally recognized by the courts of this country as an ordinary equitable doctrine of liberal construction in favor of public charitable bequests, especially where the bequest has once vested. See Sheldon v. Powell, 99 Fla. 782, 128 So. 258. Vol. 2 Bogert on Trusts and Trustees, § 431, page 1287, said:
"Roughly speaking, it is the principle that equity will make specific a general charitable intent of a settlor, and will, when an original specific intent becomes impossible or impracticable of fulfillment, substitute another plan of administration which is believed to approach the original scheme as closely as possible. It is the theory that equity has the power to mould the charitable trust to meet emergencies".
The dominant purpose or intention of the testator was that the property described in paragraph 12 should be a gift to the Christian Herald "to be used for charitable purposes only". If the words "New York" had been employed by the scrivener in drafting the will rather than the words "New Jersey", the appellees would have had but little, if any, ground to stand upon. It is clear that the testator wanted to use the Christian Herald only as a conduit to place the property described in paragraph 12 with its charitable agencies, supra, and that the "same used (by the said charitable agencies) for charitable purposes only". In the case of Massachusetts Audubon Society v. Ormond Village Improvement Ass'n, 152 Fla. 1, 10 So.2d 494, 495, we held that as a general rule "the misnomer of a legatee will not defeat a bequest where the one intended can be identified with certainty."
The decree appealed from is reversed with directions for further proceedings in the court below not inconsistent with the views and opinion herein expressed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur. *Page 569