59 So.2d 13 (1952)
In re WILLIAMS' ESTATE.
Supreme Court of Florida, Special Division B.
April 25, 1952.
Rehearing Denied June 13, 1952.
Marks, Gray, Yates & Conroy, Jacksonville, for appellants.
*14 Walter F. Rogers, C.B. Peeler and Philip S. May, all of Jacksonville, for appellees.
CHAPMAN, Justice.
Charles E. Williams, a citizen and resident of Duval County, Florida, on March 31, 1943, made his last Will and Testament and named as executor thereof Attorney Philip S. May, a member of the Duval County Bar. Sometime during the year 1949 Williams died and his Will was offered for probate and duly probated in the County Judge's Court of Duval County on October 11, 1949.
The Charles E. Williams Last Will and Testament is viz:
"Last will and testament of Charles E. Williams.
"Charles E. Williams, of Duval County, Florida, makes, publishes and declares this to be his last will and testament:
"Any and all previous wills or testamentary provisions by me made are hereby revoked fully and completely.
"1. My executor shall pay my just debts, funeral expenses, and any lawful taxes and assessments against me, my property or my estate, as soon as may be convenient without sacrifice in the sale of any of the assets of my estate.
"2. There is not now in being any person who would be entitled by law to inherit any of my property, should I die intestate, but if any person or persons should succeed in judicially establishing a right to inherit any of my property, then I give, devise and bequeath to each of such persons the sum of one dollar.
"3. I give, devise and bequeath all of my property, real, personal or mixed, of which I may die seized and possessed and to which I may now or hereafter be in any way entitled, or over which I now or hereafter have the power of appointment by will, to my executor hereinafter named to be sold and converted into cash as soon as may be convenient without sacrifice in the sale of any of the assets of my estate, the proceeds to be distributed equally between the following:
"Bridgeport Protestant Orphan Asylum of Bridgeport, Connecticut, or its successor;
"The First Methodist Episcopal Church, South, of Jacksonville, Florida, or its successor;
"The Board of Missions of the Methodist Episcopal Church, South, of Nashville, Tennessee, or its successor;
"The Ministerial educational fund of Southern College, Lakeland, Florida, or its successor;
"Faith Temple, Incorporated, of Jacksonville, Florida, or its successor, for the purpose of broadcasting the gospel of Jesus Christ over the radio.
"If any of the foregoing devises should fail because the designated institution no longer exists or is not carrying out the purposes for which it was organized, I direct that the share which would otherwise have gone to it, be equally divided among the remaining institutions.
"4. I name Philip S. May, of Jacksonville, Duval County, Florida, as executor of this my last will and testament.
"5. I request that my body, in a good casket and slate vault, be decently and modestly interred in the Hatter family lot in Evergreen Cemetery, located in Jacksonville, Florida, near that of my good friend and benefactor the late Miss Mary Hatch Hatter, after a funeral service in the First Methodist Episcopal Church, South, of Jacksonville, Florida.
"In Witness Whereof, I have subscribed my name on this and every other sheet of this my last will and testament, in the City of Jacksonville, Duval County, Florida, this the 31st day of March, A.D. 1943.
 Charles E. Williams (Seal)"
On July 20, 1950, Philip S. May, as executor of the Charles E. Williams Estate, *15 filed in the County Judge's Court of Duval County, Florida, a petition for an order adjudicating the bequest set forth in the Williams Will to Faith Temple, Incorporated. It was made to appear by the petition that Faith Temple, Inc., was organized on July 11, 1935, as a corporation not for profit and the charter was approved by the Circuit Court of Duval County, Florida. The names of the several incorporators were set out in the charter of Faith Temple, Inc. On January 15, 1944, the trustees of Faith Temple, Baptist Church, a religious organization, filed their bill of complaint in the Circuit Court of Duval County against Faith Temple, Inc., Robert Witty and others, and alleged that Faith Temple Baptist Church had succeeded to all the properties, real and personal, and all rights, privileges and responsibilities of Faith Temple, Inc.
On October 2, 1944, the Circuit Court of Duval County made and entered its final decree in the above stated cause and determined thereby: (a) Faith Temple Baptist Church was a reorganized continuance of the incorporated church or society formerly known as Faith Temple, Inc.; (b) Faith Temple Baptist Church is the congregation of Faith Temple, Inc., and as such congregation is the beneficiary of all property, real and personal previously held by Faith Temple, Inc.; that Faith Temple, Inc., since the entry of the final decree on October 2, 1944, has ceased to exist. It further alleged that Faith Temple Baptist Church has disbanded and transferred all of its properties, real and personal, to another Baptist Church, to-wit, the Hendricks Avenue Baptist Church. Also, since the Faith Temple, Inc., has ceased to exist, it does not have a successor now existing and operating as an institution entitled, as a matter of law, to succeed to the bequest made to Faith Temple, Inc., supra, in the Charles E. Williams Last Will and Testament.
The beneficiaries named in the Will were made parties, appropriate pleadings were filed, and testimony was taken in the County Judge's Court of Duval County on the issues made by the pleadings. Thereafter an order was entered to the effect that Hendricks Avenue Baptist Church was not entitled to the bequest made to Faith Temple, Inc., or its successor, for the purpose of broadcasting the Gospel of Jesus Christ over the radio, or, in other words, the bequest stated in the Will had lapsed or failed and the amount thereof should be divided among other named beneficiaries. On appeal to the Circuit Court the order of the County Judge's Court was affirmed. The Hendricks Avenue Baptist Church appealed.
We have held on many occasions that the intention of the testator is to guide the courts in the construction of wills. Murphy v. Murphy, 125 Fla. 855, 170 So. 856. In construing a will, the testator's intention must be determined and the whole will should be considered in order that light may be thrown on the meaning intended to be expressed. Boyle v. Howe, 126 Fla. 662, 171 So. 667. In ascertaining the testator's intention, the will in its entirety will be considered, and when once the intention has been discovered, the wording of the will will be given such liberal construction as will effectuate the intention of the testator as may be consistent with established rules of law. Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1.
It appears by the record that Faith Temple, a religious society, was organized as a corporation not for profit by a decree of the Circuit Court of Duval County on July 11, 1935. There was a rapid increase in the membership of Faith Temple, the congregation purchased defaulted bonds, from time to time, at prices ranging from ten to fifty cents on the dollar and the investments so made were profitable. In 1938 the Circuit Court of Duval County approved a charter incorporating "Gospel Broadcaster", which broadcast the Gospel of Jesus Christ and was operated and paid for by the membership of Faith Temple. Faith Temple functioned as a non-denominational or non-sectarian institution continuously from 1935 until late 1942 or early 1943, when the pastor, Reverend R.G. Witty, and a majority of the membership of Faith Temple affiliated with the Baptist Church. Faith Temple, on February 28, 1943, was reorganized by *16 a majority vote of the membership and the name changed to Faith Temple Baptist Church. The said Baptist Church, after reorganization, had the same officers, the same members, occupied and held the same property as Faith Temple, the bank accounts were changed and moneys subsequently collected were deposited as the property of Faith Temple Baptist Church. The name "Faith Temple, Inc.," after February 28, 1943, ceased to exist, but the organization continued in the name of "Faith Temple Baptist Church."
The Circuit Court of Duval County, in a chancery cause involving the membership and property of Faith Temple, under date of October 2, 1944, entered a final decree therein and held, among other things: (1) "that Faith Temple Baptist Church is a re-organized continuance of the incorporated church or society known as Faith Temple, Inc.;" (2) "that Faith Temple Baptist Church is the congregation of Faith Temple, Inc., and as such congregation is the beneficiary of all property, real and personal, held by Faith Temple, Inc." It is to be observed that Faith Temple Baptist Church became the successor to both the real and personal property, as well as the congregation of Faith Temple, Inc., about the time (March 31, 1943) Charles E. Williams executed his last Will and Testament involved in this suit. The testator Williams died in 1949, some six years thereafter.
The membership of Faith Temple Baptist Church has continued to hold its religious services and its program of religious work since 1943 in the Jacksonville area. The membership, on October 14, 1944, adopted a resolution which changed the name to Calvary Baptist Church, and, for reasons not necessary to recite herein, on a later date, to-wit, October 10, 1945, by resolution approved and ratified by the membership of Calvary Baptist Church, changed the name to Hendricks Avenue Baptist Church. Thus, the identity of the institution originating as Faith Temple, Inc., was changed in 1943 to Faith Temple Baptist Church; on October 4, 1944, was changed to Calvary Baptist Church; and on October 10, 1945, was changed to Hendricks Avenue Baptist Church. On December 11, 1945, the Circuit Court of Duval County issued a charter to Hendricks Avenue Baptist Church, a non profit corporation.
It appears by the record that Charles E. Williams executed his Last Will and Testament on March 31, 1943, about the time that Faith Temple, Inc., merged into and became Faith Temple Baptist Church. On October 2, 1944, a final decree was entered in the Circuit Court of Duval County in which it was decreed that Faith Temple Baptist Church was a reorganized continuance of Faith Temple, Inc.; all property, real and personal, formerly held by Faith Temple, Inc., became the property of Faith Temple Baptist Church; the former congregation or membership of Faith Temple, Inc., became the congregation or membership of Faith Temple Baptist Church. On October 4, 1944, the membership of Faith Temple Baptist Church adopted a resolution changing its name to Calvary Baptist Church; subsequently, on October 10, 1945, the membership of Calvary Baptist Church adopted a resolution which changed its name again to Hendricks Avenue Baptist Church. On the aforesaid mergers or changes in the name of the membership or congregation, from time to time, we find but little, if any, conflict in the testimony. The mergers and changes in the name of the organization occurred some four or five years prior to the testator's death. The evidence establishes and the conclusion is inescapable that the Hendricks Avenue Baptist Church is the successor of Faith Temple, Inc.
The reason assigned below of the failure of the bequest in the Williams' Will to Hendricks Avenue Baptist Church, successor to Faith Temple, Inc., was bottomed on the theory that the Hendricks Avenue Baptist Church "is not now engaged in broadcasting the Gospel of Jesus Christ over the radio other than by their contributions to the broadcasts regularly conducted by associations of Baptist Churches * * * the Hendricks Avenue Baptist Church is not at this time conducting regular radio broadcasting of the Gospel of Jesus Christ that was previously carried on *17 by Faith Temple, Inc." It was the testator's will that the funds provided for in the bequest should be used for a continuation of the broadcasting of the Gospel of Jesus Christ over the radio as was done by Faith Temple, Inc.; that since Hendricks Avenue Baptist Church is not engaged in broadcasting the Gospel of Jesus Christ over the radio as was done by Faith Temple, Inc., then the funds named in the bequest must fail, as the intention and purpose of the testator is not being carried out by the Hendricks Avenue Baptist Church and therefore the proceeds of the bequest to Hendricks Avenue Baptist Church as successor of Faith Temple, Inc., must be divided and given to the other institutions as provided by the terms of the Will.
On appeal to the Circuit Court of Duval County, the order of the County Judge's Court was affirmed. The Hendricks Avenue Baptist Church, successor of Faith Temple, Inc., perfected an appeal to this Court, as provided by Section 732.15, F.S.A. Counsel for appellee cite the case of American National Bank of Jacksonville v. Marks Lumber & Hardware Co., Fla., 45 So.2d 336, as authority for the conclusion that this Court is now without jurisdiction to hear and determine this controversy. There is no merit to the contention, as the above cited statute authorizes this appeal and is here controlling.
It is well established in this class of litigation, that it is our duty to examine the evidence and all Exhibits and determine if there is substantial competent testimony to support the findings of the Probate Court and that it did not misinterpret the legal effect of the testimony, as a whole. If, as a result of the examination, it is found that there is no substantial competent evidence to support the findings of the Probate Court and that the Court misconstrued the evidence taken as a whole, then the findings of the Probate Court must be reversed, otherwise affirmed. In re Estate of Lorenzo, 160 Fla. 522, 35 So.2d 587; In re Donnelly's Estate, 137 Fla. 459, 188 So. 108; In re Wilkins' Estate, 128 Fla. 273, 174 So. 412; In re Alkire's Estate, 142 Fla. 862, 144 Fla. 606, 198 So. 475; In re Thompson's Estate, 145 Fla. 42, 199 So. 352; Miller v. Nelson, 160 Fla. 410, 35 So.2d 288.
On the question of a merger, consolidation or amalgamation affecting capacity to take on the part of religious corporations, Page on Wills, Vol. 4 (Lifetime Ed.), par. 1419, states the rule, viz.:
"Sec. 1419.  Dissolution of Corporation.  A legacy or devise to a private corporation usually, in these cases, to a charitable corporation, lapses by the dissolution of such corporation before the death of the testator if the legacy or devise was not given with a general charitable purpose in mind. The fact that the corporation has discontinued its activities and is about to dissolve does not prevent it from receiving the legacy. If the legacy or devise was given with a general charitable purpose in mind, the court, by an application of the doctrine of cy pres may turn the property over to some organization which will carry on the same charitable work or some charitable work which is analogous thereto.
"A devise to public corporations does not lapse because of the consolidation of such corporations, nor does a devise to such corporation lapse because of its subdivision into several corporations. If a gift is, in effect, to a public corporation, for a given purpose, a change in the instrumentality by which the public corporation carries such purpose into effect does not cause the gift to lapse."
See Annotations, Vol. 91, A.L.R. 840-848; Bridgeport-City Trust Co. v. Bridgeport Hospital, 120 Conn. 27, 179 A. 92. We therefore conclude, in light of the above authorities, that the Hendricks Avenue Baptist Church, by operation of law, became the successor, not only of the membership but stepped into the shoes and became the owner of all property, real and personal, formerly owned and possessed by Faith Temple, Inc., inclusive of the property, if any, bequeathed to Faith Temple, Inc., in the Charles E. Williams Will.
Paragraph Three of the Testator's Will directed his Executor to sell and convert *18 all of the property of the estate into cash, as early as convenient without sacrifice, and thereafter distributed the assets of the estate equally between five beneficiaries, viz.: (1) Bridgeport Protestant Orphan Asylum of Bridgeport, Connecticut, or its successor; (2) The First Methodist Episcopal Church, South, of Jacksonville, or its successor; (3) The Board of Missions of the Methodist Episcopal Church, South, of Nashville, Tennessee, or its successor; (4) The Ministerial Educational Fund of Southern College, Lakeland, Florida, or its successor; (5) Faith Temple, Incorporated, of Jacksonville, or its successor, for the purpose of broadcasting the Gospel of Jesus Christ over the radio. "If any of the foregoing (five) devisees should fail because the designated institution no longer exists or is not carrying out the purposes for which it was organized, I direct that the share which would otherwise have gone to it, be equally divided among the remaining institutions."
It will be observed that the testator would, first, convert all of his property into cash and thereafter divide the same equally among the five devisees, supra. It was further the desire of the testator that if one or more of the five devisees, first, no longer existed when the assets were ready for a division; second, or one or more of the devisees at the time the assets were ready for a division was not carrying out the purpose for which it was organized, then such share, if any, should be equally divided by the Executor among the remaining devisees. It was the holding below that Hendricks Avenue Baptist Church, successor of Faith Temple, was not (then) engaged in broadcasting the Gospel of Jesus Christ over the radio as was done by Faith Temple, and for this reason the bequest to Faith Temple, or its successor, had failed.
It is well settled that the Last Will and Testament of a testator does not become effective until his death. Hurt v. Davidson, 130 Fla. 822, 178 So. 556, and similar cases. The cardinal rule for construing a will is to give effect to the intention of the testator as gleaned from the four corners of the instrument. Husson v. Bensel, 124 Fla. 304, 168 So. 395. In ascertainment of testator's intention, the will in its entirety must be considered, and when once the intention has been discovered, the wording of the will should be given such liberal construction as will effectuate the intention of the testator. Marshall v. Hewett, 156 Fla. 645, 24 So.2d 1.
The writer is unable to find in the language of the will, or any inference reasonably drawn therefrom, to the effect that it was the testator's will and desire that the successor of Faith Temple, Inc., should continuously engage in the broadcasting of the Gospel of Jesus Christ over the radio in a manner as "was carried on by Faith Temple or its pastor during the time that Faith Temple was active." It appears that the membership of Faith Temple, Inc., inclusive of its pastor, affiliated with the Baptist Church and changed its name to Faith Temple Baptist Church late in the year 1942 or the early portion of 1943, and a broadcasting program was maintained continuously from 1936 until about 1945. We find in the record testimony to the effect that the membership of Hendricks Avenue Baptist Church now make contributions to pay the cost of broadcasting the Gospel, but not as elaborately as formerly. The bequest of the testator was to Faith Temple, Inc., or its successor "for the purpose of broadcasting the Gospel of Jesus Christ over the radio." The Will is silent as to the extent or method or frequency of broadcasting, or the sections of the country or the number of stations to be covered. The Will directs that certain funds of the testator shall be used by the successor of Faith Temple, Inc., to broadcast the Gospel of Jesus Christ over the radio, but no pattern whatsoever for the accomplishment of this purpose is set out in the Will by the testator. He died about six years after the execution of his Will and it may be assumed that he was acquainted, prior to his death, with the broadcasting programs of the successor of Faith Temple, Inc.
The case of Lewis v. Gaillard, 61 Fla. 819, 56 So. 281-284, involved the construction of the Will of the late James D. Westcott, *19 who died in Leon County, Florida, April 29, 1887. The Will bequeathed to Mrs. Mary Archer the sum of $1,000 and to an aunt of the testator, Miss Emma Westcott, the sum of $3,000. The Will provided further that the rest of the testator's estate be held in trust for the benefit of the West Florida Seminary, in Tallahassee, Florida. The West Florida Seminary was abolished by Chapter 5384, Acts of 1905, and the Florida Female College established by the terms of the same Act. It was the contention of the heirs of the late James D. Westcott that the bequest in his Will to the West Florida Seminary had failed and, as a result thereof, the residue of the property of the testator, under the law of distribution, passed to the relatives of the testator. We brushed the contention aside and held that the property of the testator bequeathed to the West Florida Seminary, under the cy pres doctrine, passed to and became the property of the Florida State College for Women.
In the recent case of Christian Herald Ass'n v. First National Bank of Tampa, Fla., 40 So.2d 563, it appears that the testator gave some property to the Christian Herald Children's Home, a New York corporation, and other property to the Christian Herald, a New Jersey corporation, in trust for charity. It appears that the Christian Herald, a New Jersey corporation, had been dissolved subsequent to the execution of the Will but prior to the testator's death. This Court held, by applying the cy pres doctrine, the property given by the terms of the Will to the defunct New Jersey corporation should be delivered to the Christian Herald Children's Home, a New York corporation, on the theory that the gift to the defunct New Jersey corporation had not failed, as the purpose of an intention of the testator could be carried out by placing the funds with the Christian Herald Children's Home, a New York corporation. See Sheldon v. Powell, 99 Fla. 782, 128 So. 258; Bogert on Trusts, Vol 2, pp. 1300-1306, par. 434.
It clearly appears from a study of the four-corners of the instrument that the testator desired to have one-fifth of his property, after the same was converted into cash, used to pay the cost of broadcasting by radio to the world the Gospel of Jesus Christ. Our adjudications make it the duty of the court to ascertain the intention of the testator and to effectuate the same. Courts are without power to defeat the clear intention of the testator gleaned from the four corners of the instrument. If the conclusion of the lower Court is sustained, then the broadcasting by radio of the Gospel of Jesus Christ will be defeated,  contrary to the intention of the testator. In the record is a resolution dated April 25, 1951, adopted by the Hendricks Avenue Baptist Church, successor to Faith Temple, Inc., accepting the bequest of the Charles E. Williams Will and expressing a willingness to do all things necessary to carry out the trust in broadcasting the Gospel of Jesus Christ over the radio.
Bogert on Trusts and Trustees, Vol. 2, p. 248, Cumulative Pocket Part, cites the following:
"Gift to the Norwich branch of the Salvation Army: On proof that at the time of the death of the testator this branch had been discontinued and work there was done through Binghamton, held that the fund would be awarded to the Binghamton branch under the cy pres doctrine. In re Smith's Will, Sur. 1947, 70 N.Y.S.2d 797.
"Cy pres will, it appears, be applied to assets of a charitable corporation on hand when it is dissolved. Attinson v. Consumer-Farmer Milk Cooperative, Inc., 1950, 197 Misc. 336, 94 N.Y.S.2d 891.
"Where a gift is made to a local church for its church purposes, and it appears that such church has ceased to exist, cy pres may be applied by giving the property to the national organization of the same church for the same purposes. In re Nuckols' *20 Estate, 1947, 199 Okla. 175, 184 P.2d 778.
"That a charitable institution which was an absolute donee under a will ceased to exist after the will took effect is a reason for applying cy pres, where a general charitable intent is found. In re Stouffer's Trust, 1950, 188 Or. 218, 215 P.2d 374.
"A gift to a home for crippled children of a certain sum of money. Prior to the death of the testatrix donor the home had been closed and the funds applied cy pres. Held, that the intent was to aid in the upkeep of a particular institution at a particular place, and not to add to the endowment fund of it, and hence the gift failed and was not to be applied cy pres or to the purposes named in the previously granted cy pres order. In re Lucas, (1948) 1 Ch. 175. Reversed (1948) 1 Ch. 425, on the ground that the intent was to add to the endowment of the charity. Noted in 15 Sol. J. 3.
"Trust to pay income to the Foreign Missionary Society of a local church. The church merged with two others and the Society ceased to exist but another society took over its functions. Held, there was a general charitable intent to aid missions and cy pres may be applied for the purpose of directing payment to the successor society for missionary purposes. Delaware Trust Co. v. Graham, Del. Ch. 1948, 61 A.2d 110.
"Trust to aid a local church which was then occupying a building there. When the local Church was discontinued due to lack of members, but the church building was moved to a town sixty miles away for use by a church of the same denomination there, held, that the funds might be applied to the second church under cy pres. Morristown Trust Co. v. Protestant Episcopal Church, 1948, 1 N.J. Super. 418, 61 A.2d 762."
The order appealed from is reversed with directions for further proceedings in the Courts below not inconsistent with the views expressed herein.
Reversed.
SEBRING, C.J., MATHEWS, J., and GILLIS, Associate Justice, concur.