In re BRADSTREET'S WILL.

County Judge's Court, Palm Beach County.

February 6, 1954.

Fisher & Dickinson, West Palm Beach, for the estate.

C. H. Earnest, West Palm Beach, for Mrs. Ray Masters.

Wideman, Caldwell, Pacetti & Robinson, West Palm Beach, for Mrs. Margaret Davis and Madame Yvonne Paul.

Williamson, Gunster & Baugher, Palm Beach, for Palm Beach County Crippled Children's Society, Inc.

RICHARD P. ROBBINS, County Judge.

Lillian A. Bradstreet, a widow domiciled at the time of her death in Palm Beach, died on February 4, 1953 leaving her last will and testament dated October 15, 1952, and admitted to probate and record in this court February 11, 1953, set forth in full below—

### Last Will and Testament

I, LILLIAN A. BRADSTREET, of Palm Beach, Palm Beach County, Florida, being of sound and disposing mind and memory, do hereby make, publish and declare this as and for my last will and testament, hereby expressly revoking all former wills, codicils and other testamentary dispositions by me at any time heretofore made.

*First:* I direct payment of all my just debts and funeral expenses as soon as practicable after my death.

*Second:* To my cousin, Nellie Goodridge Dodd, of South Hamilton, Massachusetts, I hereby give, devise and bequeath TEN THOUSAND DOLLARS ($10,000.00) in cash; also lots numbers 199, 200 and 201 in Floral Park, Palm Beach, County of Palm Beach, Florida, with all buildings, furnishings, personal and mixed thereon. It is my wish that this property be not disposed of for a period of ten (10) years after my death, but can be leased for an income.

*Third:* To other cousins or relatives, if living, between whom and me there is no particular interest or contact, I purposely refrain from making any bequest or devices to any of them.

*Fourth:* To my friend, Mrs. Margaret Davis, of 143 Caroline Street, Sarasota Springs, New York, I hereby give, devise and bequeath TWO THOUSAND DOLLARS ($2,000.00) and two (2) antique chairs which I promised her.

*Fifth:* To Madame Yvonne Paul of 25 East 48th Street, New York City, I give, devise and bequeath TWO THOUSAND DOLLARS ($2,000.00) for my love and affection for her.

*Sixth:* ONE THOUSAND DOLLARS ($1,000.00) is to be set aside in case it would be needed for our mausoleum in Woodlawn Cemetery at West Palm Beach, Florida.

*Seventh:* To Mrs. Ray Masters, of Black Mountain, North Carolina, I give, devise and bequeath TWO THOUSAND DOLLARS ($2,000.00) in cash.

*Eighth:* A list of jewelry which I wish to give friends is attached to this Will.

*Ninth:* All the remainder of my Estate, both real and personal, which I have not heretofore bequeathed in this Will, shall go into the residue and a trust created for the period of ten (10) years and the income divided and paid to the beneficiaries semi-annually, if alive. In the event of the death of any of the said beneficiaries, their bequest will revert to the trust and not to any of their heirs. At the end of ten (10) years the trust account is to be divided among the beneficiaries who are living and not to any of their relatives after their death.

*Tenth:* Should there be no beneficiaries living at the end of the trust (ten years) I give and bequeath what remains in trust to the Crippled Children's Society of Palm Beach, Florida, in memory of my husband, Benjamin M. Bradstreet.

*Eleventh:* I hereby nominate and appoint the First National Bank in Palm Beach, with Frank Swanson of Palm Beach, as my Executors of this Will and appoint Horner Fisher, attorney of West Palm Beach, as attorney for my Executors of this Will.

*Twelvth:* It is my wish that this Will is not made public or published in any newspaper.

IN WITNESS WHEREOF, I, LILLIAN A. BRADSTREET, have hereunto set my hand and seal this 15th day of October A. D. 1952.

Lillian A. Bradstreet

The foregoing instrument was signed, sealed, published and declared by the said Testator, Lillian A. Bradstreet, as and for her Last Will and Testament, in the presence of us, who at her request and in her presence and in the presence of each other have hereunto subscribed our names as witnesses, this 15th day of October, A. D. 1952.

| Hazel S. Sowell | West Palm Beach, Fla. |
| Olga E. Fenn | West Palm Beach, Fla. |
| J. Mildred Booth | West Palm Beach, Fla. |

On July 29, 1953 the executors filed their petition for a construction of the will, a determination of beneficiaries and other relief, in which they posed with distinctness the following questions—

*Question No. 1*—What property is included within the words "with all buildings, furnishings, personal and mixed thereon" in the second numbered clause of the will?

*Question No. 2*—What property is included within the words "this property" in the second numbered clause of the will?

*Question No. 3*—Does the language "it is my wish that this property be not disposed of for a period of ten (10) years after my death, but can be leased for an income" (a) Create a valid restraint upon the alienation thereof by Nellie Goodridge Dodd? (b) By whom and for whose benefit can said property be "leased for an income"?

*Question No. 4*—If there be living "other cousins and relatives" (save Nellie Goodridge Dodd) does or does not the third numbered clause of the will operate to disinherit them?

*Question No. 5*—Is the bequest to Mrs. Margaret Davis of "two (2) antique chairs which I promised her" a valid and effective bequest and if so, what chairs are included within said words in the fourth numbered clause of the will?

*Question No. 6*—What if any disposition is to be made by petitioner executors of the $1,000 referred to in the sixth numbered paragraph of the will under the direction that it "be set aside in case it would be needed for our mausoleum in Woodlawn Cemetery at West Palm Beach"?

*Question No. 7*—What if any effect has the eighth numbered clause of the will, no list of jewelry having been found attached to the will or with it?

*Question No. 8*—Is the ninth numbered clause of the will effective or not to create a trust of the residuary estate therein referred to?

*Question No. 9*—If said trust be valid and effective, from what date will the ten year term thereof be measured?

*Question No. 10*—To whom do the words "the beneficiaries" contained in the ninth numbered clause of the will refer?

*Question No. 11*—If the words "the beneficiaries" contained in the ninth numbered clause of the will be construed to refer to those named in preceding clauses of the will, in what proportions are they to share (a) in distribution of income, and (b) in distribution of corpus?

*Question No. 12*—Do the words "the Crippled Children's Society of Palm Beach" sufficiently designate "Palm Beach County Crippled Children's Society, Inc." as the beneficiary under the tenth numbered clause of the will?

*Question No. 13*—In the event that it be held that no trust is effectively created by the ninth numbered clause of the will, does the residuary estate (a) pass to the Palm Beach County Crippled Children's Society, Inc. under the tenth numbered clause of the will, or (b) pass as intestate property?

*Question No. 14*—In the event the residuary estate be held so to pass to the Palm Beach County Crippled Children's Society, Inc. under the tenth numbered clause of the will, when does it so pass?

*Question No. 15*—In the event the residuary estate be held instead to pass as intestate property, to what heir or heirs at law does it so pass?

*Question No. 16*—What if any testamentary or other effect or operation has the so-called "Codicil No. 1. To My Executors." found in decedent's safety deposit box (Exhibit "B" hereto)?

*Question No. 17*—What if any testamentary or other effect or operation has the so-called "List of Jewelry to be Given Friends" found in decedent's safety deposit box (Exhibit "C" hereto)?

*Question No. 18*—Is decedent's jewelry included within the residuary estate?

*Question No. 19*—To whom do the several items of decedent's jewelry respectively pass?

Answers to the petition were filed by Mrs. Ray Masters, Mrs. Margaret Davis, Madame Yvonne Paul and the Palm Beach County Crippled Children's Society, Inc., beneficiaries under the terms of the will.

The duty of the court in construing the will is to ascertain the intention of the testatrix from a full and complete consideration of the will as a whole. Adams v. Vidal (Fla.), 60 So. 2d 545; Cole v. Cole (Fla.), 103 So. 78; Mosgrove v. Mach (Fla.), 182 So. 786; Trotter v. Van Pent (Fla.), 198 So. 215; Wallace v. Julier (Fla.), 3 So. 2d 711; Christian Herald Ass'n. v. First Nat. Bank of Tampa (Fla.), 40 So. 2d 563; In re Williams' Estate (Fla.), 59 So. 2d 13. And it is not the purpose of the court to make a will or to attempt to improve on the one which the testatrix has made, Boyle v. Howe (Fla.), 171 So. 667.

But inasmuch as the testamentary dispositions contained in the will cannot be determined by the language alone because of its ambiguous and obscure nature, parole and other extrinsic evidence is appropriate to show the circumstances surrounding the testatrix at the time of the execution of the will, in order to gather her intention from the will itself, read in the light of such circumstances. See Redfearn on Wills and Administration of Estates in Florida, 2d ed., section 132, page 199 (hereinafter referred to as "Redfearn").

From the testimony taken in the case it appears that Mrs. Bradstreet was a person of strong purpose and did not seek the opinion of others. She prepared her will without the advice of her attorney and delivered it to the executor bank to be kept in the will file of the trust department thereof—although she had a safe deposit box in her own right which contained documents entitled "Codicil No. 1. To my Executors." and "List of Jewelry to be Given Friends."

The purported codicil is not signed by the testatrix nor by attesting witnesses (if there were any) and therefore does not have the requisite formalities of a valid testamentary disposition of property, nor does it identify the will here under consideration. See Redfearn, section 12, page 32.

The list of jewelry to be given friends is signed by the testatrix and there is evidence to indicate that it may have been in existence at the time of the execution of the will as the bank records show that after that date the safe deposit box was not entered by anyone prior to the death of the testatrix—the said writing, however is not specifically identified by the will, nor attached thereto as stated in the eighth paragraph thereof.

Testimony discloses that the two antique chairs mentioned in the fourth clause of the will can and will be properly identified.

An investigation by one of the executors discloses that while the city of West Palm Beach, presumably as trustee, maintains a fund known as the "cemetery sinking fund," from which expenses of the cemetery are partially met, and to which contributions appear to be acceptable, there is no method whereby money can be paid to the Woodlawn Cemetery for the specific purpose of caring for a particular mausoleum. Testimony further discloses that there is no need for the funds in the upkeep of the mausoleum.

The evidence discloses that there has never been an organization or society in Palm Beach by the name of the Crippled Children's Society of Palm Beach, Florida, but that there is now and was in existence, at the time of the execution of the will, the "Palm Beach County Crippled Children's Society, Inc." which is located in said town and is a well known institution and the only one in Palm Beach County doing charitable and other work for children with various disabilities. Testimony also shows that the testatrix knew of this organization and intended to help it.

The report of the appraisers filed in the estate proceedings shows only two tracts of land in Palm Beach—one of which is described as lots 197 and 198, Floral Park Addition (known as 247 Sunset Ave.) Palm Beach, and the other as lots 199, 200, 201, Floral Park Addition (known as 251 Sunset Ave.) Palm Beach.

Answering *question No. 1* of the executors' petition, the court finds that the property included within the words "with all the buildings, furnishings, personal and mixed thereon" in the second clause of the will, means the land and buildings at 251 Sunset Ave., Palm Beach, described as lots 199, 200, 201, Floral Park Addition to Palm Beach, together with all the improvements thereon, including the furniture, furnishings and fixtures—but does not include jewelry, money, mortgages, stocks or bonds, or other property of similar nature, if any such were located thereon at the time of decedent's death.

*Question No. 2*—The words "this property" contained in the second clause of the will means the land and buildings located at 251 Sunset Ave., Palm Beach, described as lots 199, 200, 201, Floral Park Addition to Palm Beach, and includes the furniture, furnishings and fixtures in said buildings, with the exception of the two antique chairs bequeathed to Margaret Davis in the fourth clause of the will.

*Question No. 3*—The statute quia emptores, 18 Edw. I, chap. 1 (1289), made the right of alienation an inherent and inseparable quality of an estate in fee simple (see Redfearn, section 170, page 279) and the weight of authority seems to be to the effect that even

though the restraint is limited to time only, it is void as being repugnant to the nature of an estate in fee and the better rule is that a direct restriction for any time, however short, is void (see 41 Am. Jur., section 76, page 115). I therefore find, as a matter of law, that the attempted restraint on the alienation of lots numbered 199, 200 and 201 in Floral Park, Palm Beach, county of Palm Beach, as contained in clause second of the will, is void.

*Question No. 4*—The following rule is found in Woerner's American Law of Administration (Including Wills), vol. 3, page 1384— "The devolution of title to the property of a person dying, cast by the Statute of Descent and Distribution upon his heir or next of kin, makes it indispensable, if a testator wish to disinherit him, not only to express his intention to that effect, but to vest the title, by plain words of gift, or necessary implication, in some other person." It is the opinion of this court that the language of clause three when read in conjunction with clause nine sufficiently brings the will within the above rule so as to disinherit all cousins or relatives of the deceased except Nellie Goodridge Dodd.

*Question No. 5*—The bequest to Mrs. Margaret Davis of two antique chairs is a valid and effective bequest if they can be properly identified by extrinsic evidence.

*Question No. 7*—The weight of authority seems to hold that in order to incorporate an extrinsic writing as part of a will it must be clearly shown that the writing was either in existence at the time of the execution of the will or was made at the same time and as a part of the same transaction—and there must be such a reference to and identification of the writing within the will itself as will leave no room for doubt that it is the paper to be incorporated, 68 C.J. page 640 et seq.; 28 R.C.L. page 112; 57 Am. Jur., Wills, sections 233, 234, 235. Quoting from Redfearn, page 190—"The intention of the testator is to be derived from a consideration of the will as a whole, read in the light of the surrounding circumstances, and is not to be determined by arbitrary conjecture as to what he meant, nor by a consideration of detached portions of the will." Inasmuch as a description of the jewelry and the names of the friends for whom it was intended cannot be determined except by arbitrary conjecture in connection with a paper not attached to the will or specifically identified therein, the court holds that such jewelry shall become a part of the residuum of the estate.

*Question No. 8*—There can be no doubt but that the testatrix intended to create a trust in clause nine of her will, having used the words—"a trust created for a period of ten years and the income divided and paid to the beneficiaries semi-annually." Redfearn says in section 185 at page 319—"No formal words are necessary

to create a trust in a will, as the intention of the testator controls. If the wording of the will is such that it can be ascertained that the testator intended to create a trust, his intention will prevail so far as the creation of the trust is concerned." And the trust is not defeated because of the failure of the testatrix to name a trustee —the law will not permit a trust to fail for the want of a trustee. In Van Roy v. Hoover (Fla.), 117 So. 887, the court says—"If the author of the trust fails to name a trustee or makes no provision for appointment . . . courts of equity will take upon themselves the due execution of the trust, and, if necessary, will appoint other trustees to carry the trust into effect." The United States court of appeals, fifth circuit, in a case originating in the district court for the northern district of Florida, Burgess v. Murray, 194 Fed. 2d 131, held at page 133—"It is well settled that equity will never allow an express trust validly created to fail for want of a trustee." This court accordingly holds that clause nine of the will effectively creates a trust of the residuary estate of the decedent.

*Question No. 9*—In Cartinhour v. Houser, 66 So. 2d 686, at page 688 Mr. Justice Drew of the Florida Supreme Court reiterates the following rule laid down in Story v. First Nat. Bk. & Tr. Co. (Fla.), 156 So. 101, 107—"The law favors the early vesting of estates, and, in the absence of a clear intention of the testator to the contrary, estates are held to vest at the earliest possible date." From 69 C.J. page 759—"Unless something in the will indicates a contrary intention, a testamentary trust ordinarily goes into effect upon the death of the testator." As pointed out in the brief filed herein on behalf of two of the beneficiaries, the instrument under construction is a "home-made" will drafted by a layman without knowledge of the technicalities of estate and trust procedure. Obviously she was not cognizant of the statutory period for paying legacies or the procedure required in administering an estate and transferring residuary assets to a trustee. The date of death is a certain one and the date from which a layman would naturally expect it to start running with reference to a period for distribution. It is the ruling of the court that the trust became effective on February 4, 1953, the date of the death of the testatrix, and that the distribution of the corpus of the trust is to occur as of February 4, 1963.

*Question No. 10*—The ninth or residuary clause of the will embraced and provided for all of the beneficiaries. None were excluded. All were included, the same as if each had been named therein. There are four individuals named in the will who were specifically benefited. An uncertain description of beneficiaries should not render the bequest void if the description used as ap-

plied to all the other circumstances will identify them; 69 C.J. page 285; City Bank & Tr. Co. v. McCaa (Ala.), 105 So. 669; In re Backesto's Estate (D.C. App. Cal.), 235 Pac. 670; Tucker v. Seaman's Aid Society (Mass.), 7 Metc. 188. The testatrix by the use of the word "beneficiaries" must have meant those persons whom she had benefited by the specific devises and legacies in her will. They are: Nellie Goodridge Dodd, Mrs. Margaret Davis, Madame Yvonne Paul, and Mrs. Ray Masters. The court holds that these four are the beneficiaries intended in the ninth clause of the will.

*Question No. 11*—In construing a will it should be read in the ordinary and grammatical sense, 28 R.C.L. 221; Galloway v. Darby (Ark.), 151 S.W. 1014; "When among or amongst is used of the distribution of property among certain persons named, it properly implies that no one of those mentioned shall be excluded, but that each and all share in the distribution, and equally, unless there be something in the context showing a contrary intention." Webster's International Dictionary, 2d Ed., page 88; Rowley v. Currie (N.J.), 120 Atl. 653; In re Holder (R.I.), 41 Atl. 576. And the word "divide," unless qualified, means to divide equally, Graves v. White (Colo.), 95 Pac. 347; Ferguson v. Conklin (Ct. Civ. App. Tex.), 51 S.W. 2d 622. The income, therefore, is to be paid semi-annually to the beneficiaries living at the time of such periods of distribution, in equal shares, and the principal shall be distributed to such beneficiaries as are living at the time of final distribution, in equal shares.

*Question No. 12*—Page on the Law of Wills, Lifetime ed., vol. 4, section 1622 at page 648 states the rule to be that where the name of the beneficiary corporation, as given in the will, does not correspond to the name of any corporation in existence, it is always admissible to show the testator's acquaintance with, and interest in, an existing corporation or institution which corresponds in some respects, either in name or description, to that spoken of in the will. There is ample evidence in the record to substantiate beyond doubt that it is the Palm Beach County Crippled Children's Society, Inc. to which the testatrix made reference in the tenth clause of her will, and it is so held by this court.

Questions numbered *13, 14,* and *15* are not answered because of the rulings hereinbefore made.

*Question No. 16*—It has been shown by the evidence that the purported "Codicil No. 1. To my Executors." was found in a safe deposit box which had not been entered by the testatrix after the day of the execution of her will. It is not reasonable to assume that she made a will and a codicil thereto on the same day—delivering

the former to the bank to be kept in its "wills vault" and placing the latter in her safe deposit box. There is nothing in the codicil to identify the will under construction, nor is there anything in the will to identify the document entitled codicil. Section 731.07 of the Probate Act, Florida Statutes 1951, requires every will (other than a nuncupative will) to be signed in the name of the testator at the end thereof, by the testator or by some other person in his presence and by his direction—and paragraph (7) thereof requires a codicil to be executed with the same formalities as a will. It has already been observed that this purported codicil was not signed in the name of the testatrix nor attested by witnesses. There is no theory under which the document could be given effect as a testamentary disposition of property or a guide to determine the intentions of the testatrix. It is held to be invalid in all respects.

Questions numbered *17, 18* and *19* have been disposed of by the court's answer to question no. *7.*

The court having answered all of the questions contained in the petition of the executors, they are directed to proceed with the administration of the estate accordingly.